Doolittle *v.* Southworth.

SAME TERM. *Before the same Justices.*

DOOLITTLE *vs.* SOUTHWORTH and others.

Where an assignment, made by insolvent debtors, of their property, for the benefit of their creditors, contained a clause directing the assignee to pay, in the first class of debts, every *sum of money owing by the assignors*, whether then due or to become due and payable thereafter, for which D. & F. were endorsers or sureties, &c. *Held*, that under this provision of the assignment, persons who had accepted and paid drafts drawn upon them by the assignors, on the credit of property consigned to the drawees to be sold on commission, and which drafts had been endorsed by D. & F., were not entitled to be paid the amount of such drafts, out of the assigned funds, as preferred creditors of the assignors.

*Held also*, that the acceptors of the drafts were to be considered the principal debtors, and the drawers only the sureties; and that consequently the assignors were not *debtors* and did not *owe* the sums of money secured by the drafts, within the meaning of the provision in the assignment.

IN EQUITY. This was an appeal from a decree of the late vice chancellor of the fifth circuit. On the 4th of January, 1845, Charles Kathern and Harvey Doolittle, copartners in the mercantile business at Herkimer, under the firm of Kathern & Doolittle, being indebted to various persons and in various amounts, beyond their ability to pay, made an assignment of all their property, real and personal, to the complainant, in trust for the payment of the debts owing by the said firm, in the order and manner therein particularly mentioned. The complainant having accepted the trust, filed his bill in this cause against the defendants, creditors of Kathern & Harvey, and interested in the assignment, and in the property and effects

Doolittle v. Southworth.

thereby conveyed, and claiming to come within the preferred classes of creditors, alleging that by reason of the large amount and complex nature of several of the accounts and claims made and held by them against Kathern & Doolittle, and the intricacy of the various transactions set forth, and the various and conflicting claims that might be made against the complainant as such assignee, in respect to the trust property, the safety of the complainant and the interest of the said creditors required that the accounts should be taken and settled, and the proceeds of the trust property be paid over, by the direction and under the authority of the court of chancery. The bill then prayed for an order of reference for taking a statement or settlement of the accounts, and all disputed claims against the trust; that the assignment might be confirmed, and the debts provided for in the first and second classes thereof might be determined by the decree of the court; that the complainant's compensation as trustee or assignee might be adjusted and settled; and that the trust property might be disposed of and converted into money, under the authority and direction of the court; that the court would make such orders and decrees for the disposition of the proceeds thereof, and the order of the payment of the creditors, as might be proper; and that the complainant might be discharged from his trust, &c. The bill was taken as confessed as to the defendants Paul Custer, Luther Hall and Henry G. Harter. The other defendants appeared and put in answers; and the cause was heard, as to them, upon pleadings and proofs.

The vice chancellor made a decree determining as to the rights of the several creditors of Kathern & Doolittle, under the assignment, and directing the order and manner in which their debts should be paid; and directing a reference to a master to take and state the accounts between the complainant as trustee, and the trust estate. By this decree it was determined that the defendants Southworth and Beach held no debt or demand against the assignors, provided for in the first four classes mentioned in the assignment; and the complainant was directed to pay to them no part of the funds realized by

Doolittle *v.* Southworth.

him under the assignment, until he should have first paid all the debts and demands provided for in the first four classes mentioned therein. The defendants Southworth and Beach appealed from that decree.

*W. & C. Tracy,* for the appellants.

*C. H. Doolittle,* respondent, in person.

After hearing counsel for the respective parties, upon the appeal,

THE COURT unanimously affirmed the decree appealed from, for the reasons stated by the vice chancellor in the opinion delivered by him on deciding the cause; which opinion they adopted as their own. It is as follows:

P. GRIDLEY, V. C. The bill was filed by the complainant in this cause, to determine the conflicting claims of several of the parties interested in the provisions of the assignment mentioned in the pleadings and proofs; to obtain the directions of the court in relation to the disposition of the trust funds among the several claimants; and to close the trust as to all the parties to this suit, so as to bar their right hereafter to question the manner in which the proceeds of the assignment shall be distributed. The creditors who are interested in the fifth provision in the assignment, have not been made parties to the bill, for the reason, as mentioned in it, that they are very numerous, and that after satisfying the parties preferred in the preceding classes, there can in no event be a surplus in which they will have a right to participate. No decree therefore to be made in the cause, will conclude or in any manner affect their rights.

It is suggested that Luther Hall, who is made a party, and who has suffered the bill to be taken as confessed, has obtained a verdict against Farmer & Doolittle, as sureties or guarantors of a debt of the assignors, Kathern & Doolittle; and therefore that although Farmer & Doolittle insist that they are not sureties, and intend to take the opinion of the supreme court

VOL. III.                 11

thereon, they ought to be protected under the provision for the first class of creditors in the said assignment, in the event that the court shall adjudge them to be liable. To effect that purpose, the decree may allow a sufficient amount of the trust funds to be retained to meet the contingency of this claim, being held to be one which belongs to the first class of debts to be paid. The defendant, Lathrop P. Stafford, has put in an answer, and claims to be preferred ; but the proof has sustained the averment of the bill, that he was not only not a preferred creditor, but not a creditor of the assignors at all ; and of course not entitled to any part of the proceeds of the assignment.

The most important question in the case, however, arises upon a claim set up by the defendants, Southworth & Beach, to have a demand which they insist they have established against Kathern & Doolittle, paid out of the assigned funds, under the provision in favor of the class of creditors first preferred in the assignment. Kathern & Doolittle were country merchants and dealers in produce, residing and doing business in Herkimer county. The defendants were commission merchants and dealers in produce, in New-York. During the season of 1844, the firm of Kathern & Doolittle transmitted to the defendants, from time to time, large quantities of cheese, to be sold on commission, and by an agreement between the respective parties, drew upon them, and the drafts so drawn were accepted on the credit of the property thus placed in their hands. The defendants claim a balance, upon a just statement of the account, of about $1900 to exist in their favor, by reason of the acceptance and payment of drafts for the firm of Kathern & Doolittle, exceeding by that amount the net proceeds of their sales. This sum, I think, should be diminished by deducting one draft for $400, which was accepted on the individual account of one of the members of the firm, without the consent of the other member of the firm, and with the knowledge that it was in fact a transaction for the benefit of the individual who presented it, and which was not charged in the account of the firm, at the time. I also think the loss sustained on the lot of cheese sold in Philadelphia should be borne

by the defendants.   The defendants' place of business was in New-York, and the cheese was designed for the New-York market, and it must be implied as a part of the agreement of the parties, that the cheese was to be sold there.   I think this is a necessary conclusion, in the absence of any assent of the owners, and of any proof of a general usage of the trade to send to other markets goods thus received to be sold on commission. And the witness, Carter, comes far short of proving any such usage.   The difference, therefore, between the sum realized in Philadelphia and the market price of such an article as this in New-York, at the time, should be deducted from the balance claimed by the defendants.   It appears, also, that the drafts accepted and paid by the defendants, which they insist are embraced in the class of debts first preferred, were respectively for $200, $900 and $1000, drawn by Kathern & Doolittle on Southworth & Beach, under the agreement aforesaid, endorsed by Farmer & Doolittle, discounted at the Oneida Bank, immediately transmitted to the defendants, and by them accepted and returned to the bank.   It also appears, that when the first two of the said drafts were drawn and accepted and paid, the defendants had in their hands sufficient funds to pay all their existing liabilities for Kathern & Doolittle.   The same fact is true of the $1000 draft, except as to a sum of less than one half of its amount.   There can be no pretence, therefore, that these defendants were, as to their drafts thus accepted and paid, (with the exception above mentioned of the $1000 draft,) in any sense accommodation acceptors for Kathern & Doolittle.   The discount and acceptance of these bills, transferred to the bank by intendment of law the funds in the hands of the defendants, on the credit of which they were accepted.   But even notwithstanding an actual over-draft and an actual balance ultimately found against the drawers of a bill, under circumstances precisely similar to the facts in this case, it has been solemnly adjudged in the case of *Bagnall* v. *Andrews,* (7 *Bing.* 217,) that the acceptor could not be regarded as an accommodation acceptor, so as to render the drawer an incompetent witness, on the ground that he was the principal debtor.   It also ap-

pears, that the defendants were and are in good credit, and that when the assignment was made, on the 4th of January, 1845, it was supposed by the assignors, that there would be a balance due to them from the defendants, and that the defendants were solvent and able to pay such balance.

We now come to the question whether the defendants are entitled to have this balance, whatever it may be, against the firm of Kathern & Doolittle paid, as being embraced within the class of demands first preferred in the assignment. The clause under which this claim is made is in the following words : " Second. To pay, satisfy and discharge all and every sum of money owing by said firm, whether the same has yet become due and payable, or is to become due and payable hereafter, for which Harvey W. Doolittle and John Farmer are endorsers or sureties, or in any way bound for the accommodation of said firm, whatever may be the form of the security, and whether the said Harvey W. and John are jointly or separately liable for the same, and whether they, or either of them, are liable alone or together, and with any other person or persons." It is manifest that a demand to be embraced in this provision, must be, first, a sum of money owing by Kathern & Doolittle ; and secondly, it must be a demand for which " Farmer & Doolittle are endorsers or sureties, or bound for the accommodation of Kathern & Doolittle." These two conditions being satisfied, then, indeed, it is declared to be immaterial whether the demand is due and payable, or is to become so thereafter, and also in what manner or by what form of security they were so bound, or whether jointly or severally or with third persons. Now, were the " sums of money" secured by the three drafts above mentioned, *owing* by Kathern & Doolittle ? Looking to the rights and obligations of the parties to these drafts, Southworth & Beach, *the acceptors*, are by the settled rule of law, applicable to commercial paper, the *principal debtors ;* so, too, we have seen, that regarding only the just and legal rights of the parties, irrespective of the rule just referred to, the defendants were the principal debtors, and Kathern & Doolittle sureties, merely. And so strictly is this rule of relative liability

Doolittle *v.* Southworth.

maintained, that in an action by the holder against these defendants as acceptors, Kathern & Doolittle would be competent witnesses for the latter, even without a release. (*See* 7 *Bing.* 217, *before cited, and also* 15 *John. Rep.* 467; 17 *Id.* 170; 1 *Denio*, 116.) These cases incontrovertibly establish the position, that Kathern & Doolittle were never the *debtors,* and that they never "*owed*" the moneys secured by these drafts; that they were mere endorsers, contingently liable on the happening of certain conditions. A discharge under the insolvent laws, before they became fixed, would have been no bar to an action against them on their endorsement, for the reason, *that no debt* was then in existence which *could be* discharged. (*See also on this point* 1 *Hill's Rep.* 507; 5 *Id.* 160; 3 *Kent's Com.* 86.) We see from these principles and authorities, that by the legal rule, Kathern & Doolittle were not "*debtors;*" in other words, that they did not *owe* the sums of money secured by the bills in question. Nor did they "*owe*" this money in the popular sense of the word. A man is said to "*owe*" a sum of money, when he is absolutely and unconditionally bound to pay it; not when he is contingently and conditionally liable to pay it on the happening of some future event. One guaranties the payment of a sum of money due from A., a principal debtor, provided the debtor does not pay it by a given day, and on due demand and notice. Can it be maintained that the endorser "*owes*" the money? Again, the attorney is responsible for the costs to the amount of $100, in the event that his non-resident client fails in the suit and does not pay. Is he a debtor, and does he "*owe*" the costs before the contingency happens? No one will maintain such a proposition. If I am right in this view of the question, the demand of the defendants can in no wise be said to have been (when this assignment was made) a "*sum of money*" owing by Kathern & Doolittle, and therefore was not embraced in the provisions of the assignment under which it is claimed; notwithstanding that provision was intended to provide, as the counsel rightly argues, for certain specified *debts and securities,* rather than for individual creditors.

Doolittle *v.* Southworth.

The counsel for the defendants, however, insists that the words, the meaning and interpretation of which I have been considering, should receive a larger and more liberal construction, so as to embrace all demands on which Farmer & Doolittle were liable, as sureties for Kathern & Doolittle, whether these demands were the *proper debts* of Kathern & Doolittle or not, and whether the principal debtors were able to pay or not. Why, I ask, should such a construction be given to these words? If it be said that the ultimate object of giving the preference in question, was to secure Farmer & Doolittle against any possible loss from any possible undertaking on the part of Kathern & Doolittle, and that such a construction was necessary to effect this general and ultimate intention of the assignors, there are several answers to this position. (1.) It is by no means certain that the assignors intended to secure Farmer & Doolittle against any liabilities, except the *proper debts* of the failing firm. It may well be supposed that they had the common desire of failing debtors, that their property should be first devoted to the payment of their "*own*" debts, rather than to discharge their liabilities for third persons. (2.) Again, granting that their intention *was* to secure Farmer & Doolittle against any ultimate loss; that end would be perfectly attained by giving the provision in question what I regard as its legitimate construction. Take the present case for an example, and grant that Farmer & Doolittle should be sued by the holders and be compelled to pay these drafts, their right of recovery over against these defendants on the drafts would be ample and perfect. (3.) Again, if it were desired to secure Farmer & Doolittle against any ultimate loss, and from the supposed insolvency of the defendants, had such a loss been anticipated, the assignors could easily have provided that Farmer & Doolittle should be *indemnified* in the event of any ultimate loss by them, occasioned by the failure of other prior parties to the bill, without devoting this property to the *absolute payment* of the debts of third persons. I cannot see, therefore, any good reason for giving the phraseology in question any other than its ordinary and obvious meaning.

But, it seems to me, that there are very strong reasons against

the construction contended for by the defendants' counsel.  The great object to be attained in the construction of written instruments, is to ascertain the *intention* of those who made them ; and one rule laid down, is to follow the natural and obvious meaning of the words and phrases.    By that rule I have shown, I think, that the defendants' construction is an erroneous one. Let us, however, look at the situation of the assignors when they made the assignment, and the circumstances connected with their condition, and thus endeavor to ascertain their intention in the clause in question.    We are entitled to do this in analogy to the rule laid down by Mr. Wigram for the Construction of Wills.    ( *Wigram on Extr. Ev.* 59, 138, *cited 2 C. & Hill's Notes*, 1399.)    " Every claimant (says this author) has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called on to declare."    Then follows the remark of the editors that there is no distinction between wills and other written instruments, in this respect, as there manifestly can be none. When Kathern & Doolittle made this assignment, they were insolvent, owing large debts and many creditors, and having considerable means which they would naturally desire should be applied to the payment of their debts, and in such a manner that in the event of a deficiency, some sureties or creditors should be preferred.    They would naturally desire, as I have already said, that their property should first be devoted to the payment of their *own* debts in preference to those of other persons, especially if that could be done (*as it was done*) in this case, without subjecting any of their friends who are sureties for them, to ultimate loss.    Again, they would desire such of their friends as were *sureties* for their *own* debts, to be preferred to creditors at large.    This *was* done by the provision in question. Again, they would naturally desire that others, who, on account of relationship, or because their debts were, for any cause, deemed more worthy than those of their general creditors, should be first paid.    They did this in the provision for the second and third classes of debts provided for.    It appears, therefore, that

Doolittle *v.* Southworth.

by giving this clause which we are discussing, the interpretation I have assigned to it, we impute to the assignors just such an *intent* as would naturally influence them under the very circumstances under which they acted.

Now let us see what they must have intended to do with this property, if we impute to them the *intent*, and to the words they have employed the *interpretation* which the defendants contend for. They must have intended that the three drafts mentioned, amounting to $2100, should be paid out of the first proceeds or avails of their property, in preference to and in exclusion of many of the most sacred of their *own* debts, and those of their own friends and relations, who were not only creditors but sureties; and what was this demand and whose was the debt, for the payment of which their brother and their neighbors who were sureties without consideration, were to be postponed and sacrificed? It was in the first place not a debt for which they were *primarily* liable; it was a debt which they and *others* supposed did not belong to them to pay, and never would, for they believed the defendants indebted to them; it was also a debt of the defendants, which they were not only bound *primarily* to pay, but which they were entirely *able* to pay, and which the assignors had no reason to doubt they *would* pay, at the maturity of the drafts; and finally, it was a debt upon which they did not believe, and had no reason to believe, that Farmer & Doolittle would ever be made liable, much less exposed to any ultimate loss.

I now ask, in the light shed upon this question, by putting ourselves in the position of the assignors when they executed this assignment, what possible motive could operate upon them to adopt a phraseology which should *distinctly* express the *intention* of devoting the first proceeds of their ruined fortunes to the payment of a debt *of the defendants*, which they were supposed to be liable, able and willing to pay? If no reasonable motive can be assigned, then I think we should not depart from the ordinary and natural interpretation of the provision in question, and impute an intent to the assignors, the very supposition of which is in the highest degree improbable and absurd.

I cannot, therefore, assent to the construction which the defendants' counsel thinks is the true one.

The decree must be framed in accordance with the conclusions expressed in this opinion.

