THE ROME EXCHANGE BANK v. SARAH EAMES and CHARLES
KIRKLAND, surviving trustee, etc.

Where the party claims the benefit of a trust conveyance, treating it as valid in
his complaint and nowhere therein seeking to impeach it, he is not entitled
to relief on the ground that such conveyance is void.

It is a universal rule in chancery to grant relief, if at all, on some matter put
in issue by the pleadings.

A deed of trust made for the payment of debts extends only to debts existing
at the time of making the deed. ·

A debt becoming due subsequently to the making of such deed, under the act
of March 22, 1811, making stockholders of certain corporations liable for the
debts thereof due and owing after its dissolution, is not within the provision
of such deed.

THE action was by the plaintiffs, a banking association, to
obtain payment from trust property in the hands of the
defendant Kirkland, of a judgment for $3,138 damages and
costs recovered in December, 1855, against the defendant Mrs.
Sarah Eames (now deceased), as a stockholder to the amount
of $3,082 in the Manchester Manufacturing Company, which
was dissolved in August, 1854.

The cause was tried before the Hon. DANIEL PRATT, with-
out a jury, at the Oneida Circuit, in June, 1857.

On the trial, the plaintiff claimed that the admissions con-
tained in the pleading in this action made out their case, and
rested on such admissions. The defendant then gave evi-
dence as to the nature and extent of the trust property orig-
inally, the debts and charges upon it, the management by
the trustee, the value and description of what was remaining
at the time of the trial, etc.

The evidence being closed the judge found as facts:

1. That each of the several allegations of fact contained in the
complaint were true. The facts alleged in the complaint were,
that on the 3d of September, 1833, Mrs. Sarah Eames, then
being the owner and in possession of a large amount of prop-
erty, both real and personal, made and executed a deed of
assignment thereof to Kirkland and one Walter S. Eames, in
trust for certain purposes therein expressed, among which

are to pay all the just debts of her, the said Sarah Eames, of every description, etc., which deed is set out. The trusts in the deed are declared as follows : " 1st. To pay all my just debts of every description." The intent and object of this clause being fully to secure the payment of all the " *debts due from me* of whatever nature the same may be." 2d. To pay the expenses of the trust. 3d. To invest the balance, and from the net income thereof, and such further and other sums as may be necessary, to provide for her reasonable support and maintenance during her life. 4th. At her decease to distribute all that remains of the property conveyed, and its proceeds, to her children and heirs named. The complaint then alleges that this deed, when executed, was duly delivered to the trustees, and they entered upon the discharge of their duties, and paid out of the transferred property, the *debts* of Mrs. Eames so far as they were then ascertained ; that upward of $4,000 still remains in the hands of Kirkland, the surviving trustee, under and by virtue of said trust, and for the uses and purposes in the deed expressed ; that before and at the time the trust deed was executed, Mrs. Eames owned $3,082 of the stock of the Manchester Manufacturing Company, and that it never was transferred by her to said trustees on the books of the company, but continued to stand in her name down to the 8th of August, 1854, at which time the company was dissolved ; that at the time of said dissolution the plaintiffs were creditors of the company to the amount of over $3,200 ; that the plaintiffs as such creditors lately brought an action against Mrs. Eames to recover so much of that debt as equaled the amount of stock held by her in said company, and, in December, 1855, recovered judgment against her for $3,138.58 ; and that an execution has been issued and returned unsatisfied on that judgment; that the plaintiffs have requested the trustee to pay the judgment and he refused so to do; and that the defendant Mrs. Eames is owing no other debts, and under no pecuniary obligations save said judgment.

2. The judge further found, that the Manchester Manufacturing Company was organized as a corporation, under

and pursuant to the provisions of the act passed March 22, 1811, entitled "An act relative to corporations for manufacturing purposes," and continued subject to the provisions of said act as regarded the personal liability of its stockholders to the time of its dissolution; that all the property held by the defendant Sarah Eames passed to the trustees named in said deed of trust on delivery thereof at the time of the date; that her indebtedness at that time exceeded the amount of her personal property; that the property now remaining in the hands of the defendant Kirkland, as such trustee, does not equal in value the real estate that passed under such deed of trust; that there is a perpetual annuity of $250 charged upon the trust property now remaining, payable to St. Stephen's Church, subject to which the trustee holds the funds; that the trust property now amounts, of personal, to about $4,750, and of real estate to about $6,000; and that the persons named in the trust deed for whom provision is there made, are some of them living, and some are infants.

The judge found, from the foregoing facts, as conclusions of law: 1st. The complaint in this cause assumes the validity of the assignment from Mrs. Eames to the defendant. 2d. By the trust deed Mrs. Eames became divested of all interest in the trust property, and the entire title passed to the trustees, subject to the trusts therein expressed: first, to pay the debts there existing; second, to apply the income to the support of Mrs. Eames during life; third, remainder to children and heirs of Mrs. Eames. 3d. The debt for which this action was brought did not exist at the time of the execution of the trust deed, but accrued in 1854, upon the dissolution of the company. 4th. It does not, therefore, come within the purpose of any of the trusts contained in the trust deed. 5th. There is, therefore, no equitable reason why the capital of the trust funds, which in equity belong to the children and heirs of Mrs. Eames, should be applied to the payment of the debt.

The record states that the plaintiffs excepted "to each and to every one of the findings of fact, and of the findings of law by the court, and to each one separately."

The judge ordered that the complaint of the plaintiff be dismissed, with costs. Judgment being entered accordingly, the plaintiffs appealed to the General Term of the Supreme Court, when the judgment was affirmed. The plaintiffs appeal to this court.

*F. Kernan,* for the plaintiffs.

*C. H. Doolittle,* for the defendant.

WRIGHT, J. The general exception in the case, if it raises any legal question to be reviewed here, is the single one, whether the plaintiff's judgment against Mrs. Eames is a *debt* within the provisions of the trust deed, which the defendant Kirkland is bound to pay in the execution of the trust. Points, it is true, are now made that the deed is fraudulent and void as to the plaintiff's creditors of Mrs. Eames, and that in any view it was error to dismiss the complaint, as she had a valuable equitable interest in what remained of the trust property which the plaintiffs were entitled to; but in the complaint there was no allegation or pretense that the trust deed was for any reason fraudulent or invalid, or that Mrs. Eames had any interest in the trust property applicable to the payment of the plaintiff's debt, nor were there any facts found, or legal conclusions of the court, to which exception was taken, bringing up either point for review. The plaintiffs treat the trust deed as valid in their complaint, not seeking to impeach it, but claiming the benefit of it, as creditors of Mrs. Eames, within the scope of the trust; and the judgment demanded is that the trustee pay the plaintiffs' debt out of any trust funds in his hands, or transfer sufficient of the property to pay it. Instead of alleging in the complaint that the trust deed was void as to them, or intended to defraud creditors, the plaintiffs claimed a beneficial interest under it, and the pleading was not framed to reach any equitable interest of Mrs. Eames, if she had any, but to obtain payment of their debt from the funds or estate remaining in the hands of the trustee, on the ground that it was provided for in the deed.

It is a rule in chancery, not affected by the Code, that a party must recover according to the case made by his complaint, or not at all; " *secundem allegata* " as well as " *protata.*" No decree can be made in favor of a plaintiff on grounds not stated in his complaint, nor relief granted for matters not charged, although they may be apparent from some part of the pleadings and evidence. (*Kelsey* v. *Western*, 2 Comst., 506; *Ferguson* v. *Ferguson*, 2 id., 160; *Baily* v. *Rider*, 6 Seld., 363; *Thomas* v. *Carter*, 4 Barb., 265; *New York Protective Insurance Company* v. *National Insurance Company*, 20 Barb., 473.) If it be as is claimed, that the deed was void as against the plaintiff's judgment, for the reason that it was a conveyance by Mrs. Eames of her property in trust for her own use, or that it was made to hinder, delay, and defraud her creditors, these matters should have been alleged. Not being alleged in the pleading, no proof of them could properly be received, or no judgment predicated upon them. (*Chautauqua County Bank* v. *White*, 2 Seld., 236; *Baily* v. *Rider*, *supra.*) Most clearly, when a party claims the benefit of a trust conveyance, treating it as valid in his complaint, and nowhere seeking to impeach it, he is not entitled to any relief on the ground that it is void or fraudulent, or intended to defraud creditors; and this is so although it may appear to be fraudulent or void on the pleadings and evidence. (*Ontario Bank* v. *Root*, 3 Paige, 478.)

In *Barley* v. *Rider*, a judgment creditor sought to have certain lands applied in payment of his demand, on the ground that the purchase of them was in trust for the benefit of Rider, the judgment creditor. The answer asserted, and the evidence showed, that the purchase and investment made was not for the benefit of Rider, but for his children. The complaint had gone solely upon the ground that the judgment debtor was the equitable owner of the lands, they having been purchased by his direction and with his money, and the title taken and held for his use and benefit by two other defendants. This being disproved, and the trust shown, being not for the judgment debtor but for his children, the plaintiff attempted to shift his claim for relief,

contending that the investment of the sum of $1,500 by the judgment debtor, although in trust for his children, was intended to defraud his creditors then existing, or that should thereafter exist; that it was in the nature of a voluntary conveyance to defraud creditors, and was, therefore, void as to such creditors. But this court said that a sufficient answer to this was that the plaintiff had made no such case by his bill. The court say: "There is no allegation or suggestion in the bill that the investment made by Rider for the benefit of his children was voluntary or fraudulent as against his creditors. The only point which the bill attempts to put in issue in respect to these lands is, whether or not the purchase of them was in trust for the benefit of Rider; there is no allegation that if the character of the transaction was, in fact, nominally as set up by the defendants, that it was fraudulent.    *    *    If his (the plaintiff's) rights depended upon the fact that the purchase and investment for the benefit of the children of Rider was fraudulent as against him, it should have been so alleged, for it is an invariable and universal rule of the Court of Chancery to found its decrees on some matter put in issue between the parties by the bill and answer.    *    *    It makes no difference whether the defendant has by way of avoidance set up a distinct and independent fact, or merely denied the matters alleged in the bill. If the existence and truth of the facts thus set up by a defendant be controverted, the defendant must prove it, and the complainant may examine witnesses to disprove it; but when the fact set up by a defendant is made out, either by proof or the admission of the complainant, and destroys his title to relief, it is not admissible for the complainant, after the fact is made out, to impeach it on a ground not taken in his bill, and on a ground not arising from the issue between the parties.    *    *    *    If the complainant's rights depended upon showing that the creation and execution of the trust for the use and benefit of the children of William Rider was voluntary and fraudulent as against him, his course was plain. He should have amended his bill and stated the facts on which he meant to

impeach it.   The defendants would have been required
to answer such facts, and, if denied, it would then have been
competent to have supported the allegations by proof.   The
rule is explicit and absolute that a party must recover in
chancery according to the case made by his bill, or not at
all." The doctrine of this case is in harmony with the law
as it now exists, the Code providing that "the relief granted
to the plaintiff, if there be no answer, cannot exceed that
which he shall have demanded in his complaint; but, in any
other case, the court may grant him any relief consistent
with the case made by the complaint and embraced within
the issue." (Code, § 275.)   In the present case, the only
relief that could have been granted "consistent with the
complaint and embraced within the issue" was to direct
the payment of the plaintiff's judgment by the trustee as
being a debt provided for in the trust deed itself.   A decree
setting aside the deed on the ground that it was fraudulent
or void as against the plaintiffs, that they might subject the
property in the hands of the defendant Kirkland to the pay-
ment of the judgment, would have been utterly inconsistent
with the case made by the complaint, and wholly without
any issue raised by the pleadings.

Looking, therefore, at the matters charged, the issues raised
and tried, the facts found, the legal conclusions of the judge,
and the exceptions to such conclusions, as has been stated,
the only point for our consideration is whether the debt of
the plaintiff was within the provisions of the deed of trust,
which, in the performance of his duty, the defendant Kirk-
land was bound to pay.   If it was not, the complaint was
properly dismissed.   On the contrary, if it was, as the trustee
had sufficient of the trust property in his hands to pay it,
the plaintiffs were entitled to judgment.   The dismissal of
the complaint, it is true, was not excepted to; but, as the
judge evidently based his decision on the ground that the
debt for which the action was brought did not come within
the purpose of any of the trusts contained in the trust deed,
if he was wrong in this, the error should lead to a reversal
of the judgment.

Now, was the debt in suit embraced within the trust? The deed was executed and took effect on the 5th of September, 1853. It conveyed all the property, real and personal, of Mrs. Eames to the defendant Kirkland and Walter S. Eames (since dead), subject to certain trusts. Amongst these, and primarily, was to pay her just debts of every description, including those specified in the schedule annexed to the conveyance, and any others due from her not thus specified. This was undoubtedly a trust for the payment of all debts of the grantor contracted at the time of making the deed. The deed provided for no future debt, and the trustee was bound, by the terms of the trust, to pay only such debts as the grantor owed when the deed was executed. Where a deed of trust is made for the payment of debts, it extends only to debts contracted at its date. (1 Maddock's Ch., 554; Hill on Trustees, 339, 357.) The plaintiff's debt had no existence for more than twenty years subsequent to the creation of the trust, and then only became a debt against Mrs. Eames by force of the statute. She happened to be a stockholder in the Manchester Manufacturing Company at the time of its dissolution in 1854, which company then owed the plaintiff a debt, for which she became individually liable, the statute providing "that for all debts that shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their respective shares of stock in the said company, and no further." (Act of March 22d, 1811, § 7.) Can this, then, be said to be a debt entitled to payment out of the trust estate, according to the terms of the deed of trust? It seems plain to me that it is not. It had no existence when the deed was executed, in any shape or against any one. The bank itself was not organized until long afterward. If it did not exist, Mrs. Eames could neither have owed it or been liable for it; certainly no liability of any kind to the plaintiffs, who, as well as the debt, then had no existence. The fact that Mrs. Eames, when the trust conveyance was executed, was a stockholder in a company authorized to contract debts in the future for which she might be liable by the law

of the land, did not make her then owe such future debts. That she then owned stock in the company created no liability, contingently or otherwise. The statute liability is upon those persons only who compose the company at the · time of its dissolution. If the week before the dissolution Mrs. Eames had disposed of her stock, it will not be pretended that any liability would have attached to her in respect to the plaintiff's debt, or any other debt due and owing by the company. The fact that she held the stock of the company when she executed the trust deed has no bearing whatever on the question of her liability. A stockholder is not the guarantor of debts which the corporation may contract, nor is there any contract on his part, express or implied, to be responsible for its debts. It is only for a particular class of liabilities of the corporation, and upon a certain class of stock-holders — those being such when it is dissolved — that any personal responsibility is imposed. The plaintiff's debt against the company became a debt against Mrs. Eames when the company was dissolved by force of the statute, not before.

If, then, at the time she executed the trust deed she was in no sense liable for or owed the plaintiffs the debt in question, there is no ground for claiming that it was a debt provided for in such conveyance. It is absurd to assume that the trust embraced the payment of a demand or liability that had no existence at its creation, and when it depended altogether upon a contingency in the future whether the grantor would ever become bound, and the contingency entirely under her control. If it were conceded that liabilities, contingent or otherwise, are provided for by the deed, it must be liabilities existing when the conveyance was executed, and for some existing thing, and to some one who could be secured. It should be at least such a demand as would entitle a party, under the provisions of the English bankrupt act, or our insolvent laws, to a share in the insolvent or bankrupt estate. There was no demand or liability in this case which could be proved under the bankrupt or insolvent laws, or on which any portion of the bankrupt or insolvent estate could be paid, when the deed was

executed, or for more than twenty years afterward. (*Young* v. *Winter*, 16 Com. Bench, 401 ; *Boorman* v. *Nash*, 9 Barn. & Cress., 145 ; *Wollop* v. *Ebers*, 1 B. & Ald., 698 ; *Ford* v. *Andrews*, 9 Wend., 312 ; *Mechanics' Bank* v. *Capron*, 17 Johns., 467 ; *Doolittle* v. *Southworth*, 3 Barb., 79 ; Hill on Trustees, 357.) Our statute provided that a discharge under the insolvent laws should be a bar to all debts of the insolvent, whether due or to become due, which existed at the time of the insolvent's assignment ; yet, in *Ford* v. *Andrews* (*supra*) it was held that the demand of the accommodation indorser of the insolvent's note due before the assignment for money paid on the note after the discharge of the maker was obtained, was not barred by the discharge. So, also, it was held in *The Mechanics', etc., Bank* v. *Capron* (*supra*) that when the insolvent was indorser on a note not due when his petition was filed, his discharge was no bar to an action on the indorsement after he had been properly charged as indorser.    Both of these cases are manifestly stronger than the present one.    There was a debt in existence ; a creditor to deal with ; an amount fixed to be liable for ; and the insolvent had contracted on a certain contingency, to be liable for a definite and existing debt.    Here there was nothing of the kind at the date of the trust deed. It is impossible to conceive of a debt, demand or liability in respect to which it cannot be stated to whom it was owing, in whose favor it was incurred, what it was for when it was contracted, and when it matured.    Yet none of these things could be stated in regard to the debt in suit at the execution of the deed.    It became the debt of Mrs. Eames long afterward, not upon any contingent liability existing at the time of such execution, and subsequently becoming absolute, but because the statute had declared that the persons owning the stock of the Manchester Manufacturing Company at its dissolution should be individually responsible for the debts *then* due and owing by the corporation.

It cannot, therefore, be insisted, upon any reasonable construction of the deed of September, 1833, that the plaintiff's judgment is a debt within its provisions which the trustee is

bound to pay out of the trust property. That deed only provided for the payment of existing liabilities. The debts are to be paid *pro rata,* and it manifestly was not intended that the trustee should wait twenty years before he paid them, to see if some debts should not be contracted by the manufacturing company which it would be unable to pay. Had there not been sufficient assets to pay conceded debts, the trustee would not have been justified in returning any funds to pay debts like the plaintiff's that might possibly accrue on the dissolution of the corporation in an insolvent state. That is not the meaning of the deeds nor is the trust so expressed. It is expressed in these words: "To pay all my just *debts* of every description." "The intent and object of this clause being fully to secure the payment *of all debts due · from* ME of whatsoever nature the same may be." What debts? Manifestly the debts contracted and owing by the grantor when the deed was executed, and no other. This is the legal construction, and there is no language extending the trust to the payment of liabilities of Mrs. Eames other than those then incurred and owing by her. Certainly a debt that she should subsequently contract or be made liable for by statute is not within the terms of the trust. I think, therefore, that the judge was right in the conclusion that the plaintiff's debt, not existing at the time of the execution of the trust deed, but accruing in 1854, upon the dissolution of the company, did not come within the purpose of any of the trusts contained in such deed.

This disposes of the appeal upon the ground on which the action was presented by the pleadings, and tried in the court below, viz.: assuming the trust deed to be valid, and claiming that the plaintiffs' judgment against Mrs. Eames was a liability provided for by it. As the debt in suit was not a debt within the provisions of the deed, no case was made entitling the plaintiffs to a judgment in their favor. Were the question, however, presented by the case, whether the plaintiffs were entitled to have the deed set aside and the property subjected to the payment of their judgment, on the ground of fraud, or because it was a conveyance of personal estate

reserving a use or benefit to the grantor, I should entertain an opinion adverse to the plaintiffs. Instead of being made with intent to defraud the creditors of Mrs. Eames, a primary object of the conveyance was to provide for the payment in full of all her debts. The plaintiffs were not her creditors at the time of the assignment, and there could have been no fraudulent intent respecting them. The statute condemns alienations of property made with intent to defraud creditors. As against them only it is declared the conveyance or assignment shall be void. (2 R. S., 137, § 1.) The plaintiffs, therefore, not being the creditors of Mrs. Eames when the conveyance or transfer was made, were not in a position to assail its validity on the ground of fraud. But it is claimed that the deed is void as against the plaintiffs, by another statute. This statute declares that "all deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust, for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person." (2 R. S., 135, § 1.) The conveyance of 1833 was of the real and personal estate of Mrs. Eames, and after providing for the payment of her debts out of the trust property, in terms reserved the income of the surplus and as much of the capital as should be required for her maintenance and support during life. Because that this *use* was expressed in the deed, it is insisted that as against the plaintiffs, her *subsequent* creditors, it is void; and this without regard to any fraudulent intention. To this, various answers may be made. First, the conveyance was of both real and personal estate, and the former is not within or condemned by the statute. The trust as to the real estate, which constituted the bulk of the transfer, is unquestionably valid. Second, the statute only avoids conveyances, etc., of personal estate which are wholly to the use of the grantor. Third, if it were held to apply to transfers made for other objects, but containing a residuary interest or partial use for the debtor, the whole grant would not be void, but only so much of it as is not sustained by the valid purposes for which it was

made. The meaning of this statute (sometimes called the statute of personal uses) was fully considered in *Curtis* v. *Leavitt* (15 N. Y., 9). It was there held that it applies only to conveyances, etc., wholly or primarily for the use of the grantor, and not to instruments for other and active purposes, when the reservations are incidental and partial only; that if it can be applied to instruments executed for real and active purposes, such as to secure debts or procure money on loan, it avoids only so much of the grant as is not sustained by the valid purposes for which it was made. It does not avoid the entire instrument which contains the invalid use.

The judgment of the Supreme Court should be affirmed.

INGRAHAM, J. The justice before whom this case was tried found that the debt due to the plaintiffs, for which this action was brought, did not exist at the time of the execution of the trust deed in 1833, but accrued in 1854. The complaint does aver that the trust deed was illegal, but asks to have the debt paid out of the property in the hands of the trustees, on the allegation that Mrs. Eames, the grantor, was the holder of the stock on which the liability arose. It must, therefore, be considered as assuming the validity of the trust, and asking to be paid by the trustee on account of the presumed liability, from her being the owner of the stock at the time of the conveyance, or on the ground that the stock passed to the trustee by the conveyance, and therefore he was liable.

There can be no difficulty in disposing of the first ground, by the statements that no doubt existed at the time of the trust deed from Mrs. Eames to the plaintiffs. It is true she owned the stock then; and if the debt had been due then from the company to the plaintiffs it would have been provided for under the trust deed, but the debt was not created till nearly twenty years after the assignment was made. There was no liability existing at the time of the execution of the deed, and none for which the trustees could have been called on for payment. The deed was not intended to cover, and did not provide for, any not then existing indebtedness,

and not for debts to be incurred twenty years thereafter. It is idle to say that Mrs. Eames was then liable for a debt which was not contracted, and for which the principal debtor, the company, were not liable, and which had no existence till twenty years thereafter.

I think it is clear that the debt is not one contemplated by the trust deed, or one which the trustees could have paid out of the trust funds without violating the terms of the trust, and it is equally clear that there could be no relation back to the original liability of Mrs. Eames as a stockholder, so as to cover debts contracted by the company long after the trust deed was executed. It is, however, urged that the trustees are liable, as the owners of the stock under the trust deed, and as such owners they are indebted to the company.

I do not think the plaintiffs can now claim against the trustees, to recover for them, on the ground that they were the owners of the stock, and therefore liable. They have established, by their judgment against Mrs. Eames, that she was the owner. If the trustees were the owners of the stock, their liability should be enforced by an action at law, and not by a proceeding in equity. The whole claim here is based upon a judgment against Mrs. Eames. There is no proof that the trustees held any stock at the dissolution, nor any evidence sufficient to charge them with any indebtedness as such trustees. The whole theory of the complaint is that the trustees are liable as such for a debt due from Mrs. Eames, and not for a debt due from themselves.

It is suggested that the debt should be paid out of the income belonging to Mrs. Eames under the trust deed. The complaint does not contain the allegations necessary to make out such a claim, and, even if it did, I think there is no reason for allowing it in this case. The whole title to the property was in the trustees, subject to the trusts. The provision for her support was personal, not assignable, and not subject to debts subsequently incurred, and even that has ceased by her death.

The judgment should be affirmed.

76

DENIO, Ch. J.   1. A person free from debt may make a settlement of his estate for the benefit of his family, by conveying to them the whole interest to take effect in possession immediately, or the reversion to commence in possession. at his death.   So, if by the same deed he make a provision for the payment of all his debts out of the property settled, so that creditors are not and cannot be hindered and delayed, the beneficiaries named, other than Mrs. Eames, took a vested estate in reversion by this deed.   The nominal consideration of one dollar raised a use and made it a good deed of bargain and sale, and vested the reversion immediately in the beneficiaries.

2. The fact that Mrs. Eames was a stockholder in the Manchester Manufacturing Company did not disable her from making the settlement.   It is not possible that she could be considered a debtor until the plaintiffs' debt was contracted, if she could be at any time before the dissolution of the company; and there is no pretense that the debt on which the judgment was recovered was contracted prior to the conveyance to Kirkland and Eames.   The case is very much like that of one entering into a copartnership, and committing the active management to the other copartners or to an agent. There is in such a case a liability to have debts contracted, which would render the new acting copartner a debtor, but he does not become such until a debt is actually contracted. Every person is liable to contract debts, and may create agencies under which debts binding him may be contracted, but until he has done so, or a debt has been actually contracted, he cannot make a conveyance which will be fraudulent against creditors, if he is under no other liability.

3. The plaintiff cannot therefore reach the interest of the persons upon whom the reverson was settled.   I have said that the estate of the beneficiaries other than Mrs. Eames was a vested estate; and I think it was such.   If, however, it was contingent on account of what is said respecting the law of descents and distribution, which should be in force at. Mrs. Eames' death, it would make no difference in my conclusion as to the validity of the deed.   A person may create

a contingent future estate as well as one vested in interest, if there is no illegal suspense of the power of alienation. The fact that there might be changes in the persons of the beneficiaries before the taking effect of the reversion in possession does not prevent the vesting, the rule being that if there be persons in existence in whom the estate would vest in possession if the preceding estate should now terminate the latent estate is a vested one.

4. The remaining question is whether the plaintiff is entitled to sequester the rents and profits payable to Mrs. Eames during her life, to satisfy its judgment. In determining this we must consider the subject as wholly real estate. It originally consisted of both real and personal, but the latter has been appropriated to the payment of debts provided for in the trust deed. There is no direction in the deed to convert the real into personal, and the doctrine of equitable conversion has therefore no application. The securities now in the hands of the defendants are the proceeds of real estate sold, and are, therefore, so far as this question is concerned, to be considered real. At common law, I have no doubt that a conveyance of one's estate to trustees, reserving the income to the grantee for life, would render that income subject to the pursuit of creditors. It is against general principles that one should hold property or a beneficial interest in property, by such a title that creditors cannot touch it. But our statute expressly permits such arrangements, where there is a valid trust, under the fifty-fifth section of an article concerning uses and trusts. It declares that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of, such interest, etc. (1 R. S., 730, § 63.) This is not limited, like sections 18, 19, in the statute respecting the jurisdiction of the Court of Chancery, to trusts proceeding from another person. If the beneficiary cannot directly dispose of his interest, it is plain that he cannot by contracting debts put it in the power of another person to take and convert it so as to deprive the beneficiary of it. I have elsewhere stated what I conceive the motive of this peculiar exemption

604 THE ROME EXCHANGE BANK v. EAMES. [Sept.,

to have been; but that whatever the system was upon which it was enacted, the courts are bound to execute the will of the legislature. (*Graff* v. *Bennett*, Dec. Term, 1864.) I am of opinion that the rents and profits of this trust property can no more be reached than the capital.

5. It has been argued that inasmuch as this stock in the manufacturing company passed to the defendants, the trustees, by the trust conveyance, the other trust property should be chargeable with this debt. Passing by other objections which might be urged against this view, it is enough to say that the plaintiff has no judgment against the trustees. He has elected to consider Mrs. Eames as the stockholder who is liable for the debt, and is therefore estopped from taking the ground that the trustees were the stockholders.

It follows from what has been said that the judgment of the Supreme Court is right and ought to be affirmed.

Judgment affirmed.