MAURICE FITZGERALD, Trustee, etc., Respondent, *v.* RENSSELAER TOPPING, Appellant.

Where in an action in the nature of a creditor's bill, brought to set aside a conveyance by the judgment debtor as fraudulent, the plaintiff obtains a verdict and judgment is perfected some months thereafter, the adjudication, so far as relates to the validity of the judgment upon which the creditor's bill was founded, dates from the time the verdict was rendered, and the judgment simply estops the parties from denying that at that time the original judgment was a valid and subsisting one; it is not conclusive that the original judgment was unpaid at the time the judgment in the creditor's suit was perfected.

C., the trustee of an express trust, brought an action of ejectment against defendant to recover possession of the premises deeded to him in trust. In the deed it was provided that the trustee might release or sell the trust estate only under the control and direction of the Supreme Court. For the purpose of discontinuing that action, C. executed a stipulation, under seal, containing this clause: "In consideration of the consent of defendant that this suit be discontinued, I hereby release him from all claims and demands of every description relating to the property." Upon this stipulation the court granted an order dismissing the complaint. C. having died, plaintiff was appointed trustee and brought ejectment. Defendant offered the stipulation in evidence, which was objected to and objection sustained.

*Held,* no error. The stipulation could not operate as a release or conveyance, as then it would be a conveyance in violation of the trusts, and the granting the order thereon was not a direction or sanction to such release or sale.

(Argued January 3, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial district affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This is an action of ejectment. The evidence tended to prove the following facts:

In April, 1850, James Bryson was the owner of premises in Queens county, of a lot in Livingston street, a lot in Nassau street and of three lots in Wyckoff street, Brooklyn.

On the 16th April, 1850, he conveyed all the foregoing premises by a trust deed to William Culbert.

On the 28th December, 1850, Ann Morrison, administratrix, recovered a judgment against James Bryson for $315.65. Seabury Kissam was her attorney.

On the 21st September, 1852, an action was tried between Ann Morrison, administratrix, against William Culbert, James Bryson and wife, Thomas, Mary Ann and Isabella Bryson, and a verdict rendered for plaintiff, and on the 29th January, 1853, a judgment was rendered on said verdict adjudging the trust deed to be void as against Ann Morrison's said judgment. S. Kissam was Mrs. Morrison's attorney; Curtis & Topping were defendant's attorneys. H. P. Curtis, one of said attorneys, was guardian *ad litem* of the infant defendants. The defendant Rensselaer Topping is the father of D. H. Topping—one of the firm of Curtis & Topping.

On the 21st February, 1852, Culbert, the trustee, commenced proceedings by petition to the Supreme Court for a sale of the Queens county premises, which resulted in an order for sale, and a sale thereof to John A. King for $1,160.

W. J. Cogswell, who acted as counsel for King in relation to that purchase, required the Morrison judgment should be

paid and satisfied, and at a meeting held in his office between Curtis, D. H. Topping and Bryson, an amount necessary to pay the Morrison judgment and Topping's costs was reckoned up, and $411 was paid to D. H. Topping by Cogswell for that purpose October 8th, 1852. D. H. Toppping paid S. Kissam the money in satisfaction of the judgment. A satisfaction piece was promised by Kissam and subsequently delivered by Kissam to D. H. Topping.

On the 12th of February, 1856, all of Bryson's property in Brooklyn was sold by the sheriff of Kings county, by virtue of an execution issued on the Morrison judgment to the defendant, Rensselear Topping, who received a sheriff's deed therefor, May 20th, 1857. The sheriff's certificate of sale was not filed till August 28th, 1857.

D. H. Topping died February 12th, 1856. After his death Kissam delivered to the defendant an assignment of the Morrison judgment, dated September 25th, 1852. Defendant had Bryson turned out of the Nassau street house by summary proceedings.

Instead of a satisfaction piece, a release of the judgment was given to King. An action of ejectment was commenced by Culbert, June 27th, 1857, for all the Brooklyn premises, which was discontinued November 23, 1857.

Another action of ejectment for the Livingston street property was commenced by Bryson, March 18th, 1858, and resulted in a judgment of nonsuit by reason of the trust deed, which judgment was affirmed by the General Term. The General Term held that the trust deed vested the title to the premises in the grantee William Culbert upon valid trusts.

Seabury Kissam, James Bryson, H. P. Curtis, D. H. Topping and William Culbert are all dead.

The plaintiff in this action was appointed trustee in place of Culbert and brought this action of ejectment. The issue tried before the jury was, whether the judgment in favor of Morrison was paid before the sale under the execution. The verdict was in favor of the plaintiff, being the second verdict.

There was no evidence that defendant paid anything for the assignment of the judgment, or for the premises, at the sheriff's sale. Nor does it appear how or by whom the execution on that judgment was issued.

Various exceptions were taken at the trial by defendant, which appear in the opinion.

*Joshua M. Van Cott* for the appellant. The Morrison judgment was judicially determined to be a subsisting lien on the land on the 27th of January, 1853, and plaintiff is estopped from denying that it was then unpaid. (*Candee* v. *Lord*, 2 N. Y., 69.) Defendant was in possession as mortgagee if not owner, and was entitled to retain it as against plaintiff. (*Calkins* v. *Isbell*, 20 N. Y., 150; *Robinson* v. *Ryan*, 25 id., 320; *Ulmar* v. *Pell*, 18 id., 142; *Van Duyne* v. *Thayer*, 14 Wend., 233; *Phyffe* v. *Riley*, 15 id., 248; *Watson* v. *Spence*, 20 id., 260; *Fox* v. *Lipe*, 24 id., 164.)

*D. P. Barnard* for respondent. The dismissal of the complaint in the former action is no bar because no adjudication on the merits. (*Rosse* v. *Rust*, 4 Johns. Ch., 300; *Harrison* v. *Wood*, 2 Duer:, 50; *Coit* v. *Beard*, 33 Barbour, 357.)

EARL, C. The defendant claims title to the three lots on Wyckoff street, in the city of Brooklyn, under a sheriff's deed given upon a sale by virtue of an execution issued upon the judgment of Ann Morrison against Bryson. The plaintiff claims that that judgment was paid before the sale, and hence that the defendant took no title by his deed. Upon this issue, as to payment of the judgment, the jury has, upon two successive trials, given the plaintiff a verdict, and the General Term has refused to set the last verdict aside as against the evidence.

There is some evidence tending to show that the judgment was paid in the fall of 1852. This evidence is not as clear and conclusive as it might be, as most of the persons concerned in the transaction were, at the time of the trial, dead.

Ann Morrison recovered her judgment December 28, 1850, some months after the trust deed had been given by Bryson to Culbert, and she claimed that the deed was fraudulent and void as to her, and soon commenced proceedings to collect her judgment. She commenced an action against Culbert and Bryson and his children to set aside the trust deed as fraudulent and void as to her judgment, and upon the issue joined in that action, she had a verdict September 21, 1852; but judgment was not entered upon this verdict until January 29, 1853. After this verdict there was ample real estate that could be readily reached to satisfy this judgment, and it is quite probable that the persons interested therein paid the judgment rather than to permit a sale thereof. Upon the theory that the judgment remained unpaid, why were the proceedings to collect the judgment, which had been prosecuted so vigorously and successfully, suspended for more than three years before the sale of the land under the execution in 1856?

The evidence of the witnesses Loomis and Cogswell tends very thoroughly to show that the judgment was paid in the fall of 1852 by one of the attorneys for Bryson to the attorney of Ann Morrison, and hence, the judge at the trial committed no error in refusing to dismiss the complaint and in submitting the case to the jury. While there were some quite significant facts and circumstances inconsistent with the claim that the judgment was paid before the sale, yet there were circumstances and some evidence for the jury upon the question of payment, and it was their exclusive province to determine that question.

The learned counsel for the appellant claimed, on the argument before us, that the judgment of Ann Morrison, by which the trust deed was declared void as to her, conclusively established that the judgment against Bryson remained unpaid on the 27th of January, 1853, when the former judgment was entered. The litigation in that case ended with the rendition of the verdict on the 21st day of September, 1852; and as that verdict was based upon an unpaid judgment in favor of the plaintiff therein, the judgment in that action

established the fact that at that date the judgment for the money was unpaid. The adjudication dates from that time, and the entry of judgment afterward was a mere formal proceeding to carry that adjudication into effect. The judgment may have been entered by the clerk upon his own motion or by the attorney for the plaintiff therein, *ex parte.* Suppose the entry of judgment had been delayed for years, would it, when entered, after a great lapse of time, be conclusive evidence that the judgment for the money remained unpaid? Such an effect cannot be given to it. Upon the question of payment of the money judgment, it simply estops the parties from denying that it was a valid subsisting judgment at the time of the rendition of this verdict.

On the fourth of July, 1857, Culbert, the trustee, commenced an action of ejectment to recover these lots against this defendant. That action was put at issue and noticed for trial at the circuit. Culbert was defaulted and his complaint dismissed. He moved to open the default, and the motion was granted, and an order was made referring the cause to a referee. From the order of reference Culbert appealed to the General Term, and there the action was discontinued by Culbert, he signing the following stipulation :

" I consent that this action be, and the same is hereby discontinued and dismissed, and I hereby direct E. Daly, who claims to be my attorney, to close all proceedings herein ; and in consideration of the consent of the defendant that the suit be discontinued, I hereby release him from all claims and demands of every description relating to the property mentioned in the complaint.

" Dated *November* 23, 1857.

　　　　　　　　　　"WILLIAM CULBERT." [L. s.]

Upon the presentation of this stipulation to the General Term, the appeal in that cause was stricken from the calendar, and the complaint therein was dismissed. Upon the trial of this action defendant offered to prove this stipulation ; but plaintiff objected upon the ground that Culbert had no

authority to give any such paper, and that it was not within the issues in the cause. The court sustained the objection, and this ruling is now alleged for error on the part of the appellant.

The ruling was clearly correct. This stipulation could not operate as a release or conveyance of Culbert's title to the land, as it would be a conveyance in violation of the trusts under which he held the title, and therefore absolutely void under the provisions of the statute (1 R. S., 731, § 65), which provides that "when the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees in contravention of the trust shall be absolutely void."

Besides, the trust deed expressly provides that the trustee might "release" or "sell" the trust estate only under the control and direction of the Supreme Court, and there can be no pretence that the Supreme Court either directed or sanctioned the release or sale in this case. The court at General Term, upon the presentation of the stipulation, ordered the cause stricken from the calendar and the complaint to be dismissed. The stipulation to discontinue, which the trustees were competent to sign, was carried into effect, and it does not appear that the court was informed that Culbert was trustee or that it was in any way called upon to adjudicate in reference to a release or sale of any of the trust estate.

The appellant's counsel makes a point that the defendant was in possession of the premises as mortgagee, if not the owner, and was therefore entitled to retain it as against the plaintiff. It is a sufficient answer to this claim that it was not set up in the answer, nor in any way alluded to upon the trial; and it does not even appear that he held any mortgage upon these lots.

There are no other questions in the case which I deem of sufficient importance to notice. I have reached the conclusion that the judgment should be affirmed, with costs.

GRAY, C. The defendant was shielded in his possession of

the premises in question by the sheriff's deed to him, unless the judgment under which the sheriff sold and conveyed had been previously paid. There was no objection made to the parol evidence given on that subject, either when it was given or by motion after the receipt was read in evidence to strike out the parol evidence, nor was the point in any way raised that the receipt was in the nature of a contract which could not be varied by parol. The amount paid exceeded by more than fifty dollars the amount of the judgment and interest. It was in evidence that, before the payment was made, a conversation was had with Topping, the attorney of the judgment creditor, and who, it seems, was then the owner of the judgment, as to the costs, exclusive of the judgment; that a computation was made as to the amount due on the judgment and the other cost; and, after they got through with it, the amount at which the whole was computed, being $411, was paid to Topping and a receipt taken. The receipt, it is true, does not state that the sum received was in full of the judgment and costs, but that it was to be applied, so far as it would go, in payment, etc.; omitting the parol evidence that "it was to be all wiped off and closed up" by the payment of that sum, we have, from the receipt itself, evidence that the sum received was in payment so far as it would go. Parol evidence was then clearly competent to show how far it would go. If, from the evidence, it should appear that enough was paid to cover the amount contemplated, that would end the matter. Upon this point no evidence was offered on the part of the defendant. We are left, then, to recur to the evidence already given, from which it appears that the whole amount was computed, and that the sum paid covered it. Thus the question of payment in full was left open for the consideration of the jury. The grant by Bryson and wife gave the trustee the right to possess and manage the property remaining to Bryson and wife; the rents, issues and profits for the support of the *cestuis que trust*, as well as the right, under the guardianship of the Supreme Court, to mortgage or sell the property, and did not confer upon Culbert the right to

release it without the order of the court, and hence the evidence offered of Culbert's release was properly rejected.

The mere commencement and prosecution of a suit for the premises, which did not result in a judgment upon the merits either way, was quite immaterial. The court was right in refusing to charge that the receipt of Topping was no evidence of the payment of the judgment to Morrison. It was some evidence ; it was evidence of the payment of $411 to be applied to that purpose ; whether it was sufficient evidence is another question. The question as to the defendant being a mortgagee in possession was not raised in the pleadings or upon the trial ; nor did it appear, from any proofs or concessions, that anything remained unpaid upon any mortgage owned by the defendant. The expression of the judge to the jury did not amount to a direction to find either way upon the point being considered. The decision in *Vedder* v. *Fellows* (20 N. Y., 130) was not based upon the criticism pronounced upon the charge. (Id. 134.) The judgment appealed from should be affirmed.

All concur ; LOTT, Ch. C., not sitting.

Judgment affirmed.