JOHN HEERMANS, Trustee, etc., Appellant, *v.* ALMON H. ROBERTSON et al., Respondents.

One F., in October, 1868, executed an instrument under seal, which, by its terms, conveyed to plaintiff certain real and personal estate, with power to sell and convey the lands "by retail for the best price that can be got," and, until such sale, to rent such of them as could be rented, and after defraying expenses and retaining five per cent for commissions, to pay over to F. the residue of the avails received during his life, and upon his death, after payment of his debts, to distribute the residue in the manner and to the persons specified. In December, 1870, F. executed to defendant R. a written contract for the sale to him of certain premises, part of the real estate included in said instrument, and R. went into possession under said contract. F. died in April, 1873. In an action to recover possession of the premises contracted to R., *held* (EARL, J., dissenting), that conceding plaintiff became seized under the instrument of an estate in the lands in trust for leasing with power of sale, as F. was entitled to receive to his own use all receipts from sales during his life, and as he could have compelled an execution of the trust by a sale, he having, instead of resorting to a court of equity for that purpose, made a sale, thus accomplishing the same result, R. not being in default, was in equity entitled to hold the premises as against plaintiff.

Also, *held* (ALLEN, J.; ANDREWS and MILLER, JJ., concurring; EARL, J., dissenting), that no express trust was created by the instrument to come into effect at the death of F. As to whether an express trust was declared for any of the purposes for which by law such trusts may be created, *quære.*

An intent to create an express trust will not be presumed in the absence of an express declaration to that effect, where the whole purpose of the deed, without peril to the rights of any one, can be accomplished under a power conferred by the deed.

The object of the provisions of the statute of uses and trusts, limiting express trusts, was to restrict them to cases in which it is necessary, for the protection of those interested, that the title or possession should vest in the trustee. Where no such necessity exists, the intent was that the trust should be executed as a power. (ALLEN, J.; ANDREWS and MILLER, JJ., concurring; EARL, J., dissenting.)

The object of the provision of the Revised Statutes (1 R. S., 728, § 55), authorizing an express trust to sell lands for the benefit of creditors, was to legalize a trust under an assignment for the benefit of creditors, where there is a necessity that the estate should pass. No such necessity exists in case of a trust created by deed to take effect at the death of

the grantor, as the interests of all are effectually secured by construing the trust as a power. (ALLEN, J.; ANDREWS and MILLER, JJ., concurring; EARL, J., dissenting.)

To effect a change in the order of marshaling assets for the payment of debts, there must be a positive direction clearly indicating an intent to relieve the class of assets primarily liable, and to charge some other portion of the estate therewith. A general direction for the payment of debts is not sufficient.

Accordingly, *held* (ALLEN, J.; ANDREWS and MILLER, JJ., concurring; EARL, J., dissenting), that by the instrument in question the property, the subject of the power, not being charged with the payment of debts, except as all the property of the deceased debtor is charged in its equitable order, and there being no conveyance of the property subject to the payment of debts so as to charge him as grantee *cum onere*, an intent to create a trust for the payment of debts could not be implied.

(Argued January 28, 1876; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, denying a motion for a new trial and directing judgment in favor of defendant upon an order nonsuiting plaintiff on trial.

This was an action of ejectment, to recover possession of certain premises situate in Steuben county. Plaintiff claimed title and a right to the possession under an instrument in writing, executed by Joseph Fellows, of which the following is a copy:

"Whereas, I, Joseph Fellows, of Corning, in the county of Steuben and State of New York, from infirmities and advanced age deem it expedient to convey to my nephew John Heermans, of Corning, aforesaid, my real and personal estate in the States of New York, Pennsylvania, Michigan, Wisconsin, Indiana, Ohio, Illinois and West Virginia, as trustee for the purposes herein stated. Now, therefore, I the said Joseph Fellows, in consideration of the premises, and also of one dollar to me paid by the said John Heermans, the receipt of which is hereby acknowledged, have sold, and by these presents do grant, release and convey unto the said John Heermans, his heirs and assigns forever, all my real and personal estates situate in the several States aforesaid, to have and to hold the

same to the said John Heermans, his heirs and assigns forever; provided always, that the said John Heermans shall sell the said granted lands by retail for the best price that can be got for the same, and convey them in fee simple to purchasers with covenants of warranty binding my heirs to warrant and defend the title to the lands so to be sold and conveyed; and until such lands shall be sold as aforesaid, he shall rent such of them as can be rented for the best price that can be got. He shall collect all debts owing to me, and execute deeds as aforesaid for all lands now under contract of sale on payment of the debts owing on them respectively. The avails of the said real and personal estate shall be paid, distributed and disposed of as follows: First, to defray the expenses of this trust, to wit, five per cent commission on all moneys received and paid out, and all necessary and reasonable expenditures and charges in and about the execution of the trust, including local agencies. Secondly, during my life the residue of all moneys received shall be paid over to me or appropriated to my use under my directions. Thirdly, after my decease, and after the payment of all my just and legal debts, and the expenses of the trust aforesaid, the residue shall be distributed as directed in a writing supplementary to this deed to be executed by me hereafter; or in case such writing shall not be executed, then the residue shall be distributed to my heirs according to the laws of the State of New York, and I authorize and direct the said John Heermans, in his discretion, to compromise any disputed claims, and also to make abatement in debts when the security is insufficient or doubtful.

"In witness whereof, I, the said Joseph Fellows, have hereunto set my hand and seal on the 10th of October, 1868.

"JOSEPH FELLOWS." [L. s.]

On the 16th of October, 1868, Fellows executed and delivered to plaintiff another instrument under seal, in and by which directions were given as to the manner of distribution and the persons to whom distribution of the residue remaining after Fellows' death, and after payment of debts and expenses should be made.

It appeared that defendants were in possession of the premises in question, which were part of the real estate owned by Fellows at the time of the execution of said instruments, under a contract of sale from said Fellows dated December, 16, 1870. Fellows died April 29, 1873, before the commencement of this action. At the close of the case defendants' counsel moved for a nonsuit upon the ground that plaintiff had shown no title to the premises, and that the right of plaintiff under said instruments terminated at the death of Mr. Fellows. The motion was granted, and plaintiff's counsel duly excepted. Exceptions were ordered to be heard at first instance at General Term.

*A. Hadden* for the appellant. The instruments in question created a valid trust, and vested the title to the premises in plaintiff. ( *Wright* v. *Miller*, 4 Seld., 22; *Aub. Sem.* v. *Kellogg*, 16 N. Y., 83; *Pruden* v. *Pruden*, 14 Ohio [N. S.], 251; *Terry* v. *Wiggins*, 47 N. Y., 512; 2 Lans., 272; 1 R. S., 723, §§ 13, 26; id., 773, title 4, § 2; *Kane* v. *Gott*, 24 Wend., 661, 662; *Phelps* v. *Phelps*, 28 Barb., 121, 144, 145; 23 N. Y., 69; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Greenfield's Estate*, 2 Har. [Penn.], 495; *In re Livingston*, 34 N. Y., 555; *Fero* v. *Fero*, 9 How. Pr., 85; T. & B. Law of Trusts, 42–44, 209, 215, 500; *Rome Ex. Bk.* v. *Eames*, 1 Keyes, 588; 1 R. S., 748, § 2, title 5; *Post* v. *Hover*, 30 Barb., 312, 320; 33 N. Y., 600; *Campbell* v. *Low*, 9 Barb., 585, 593; *Tobias* v. *Ketchum*, 32 N. Y., 319, 330; *Leggett* v. *Perkins*, 2 Comst., 317; *Vernon* v. *Vernon*, 53 N. Y., 351, 359; *Van Vechten* v. *Van Vechten*, 8 Paige, 120; *Dillaye* v. *Greenough*, 45 N. Y., 438, 444; *Amory* v. *Lord*, 9 id., 403, 420; *Dupree* v. *Thompson*, 4 Barb., 279, 284; *Manice* v. *Manice*, 43 N. Y., 303, 364; *Knox* v. *Jones*, 47 id., 396; *Noyes* v. *Blakeman*, 2 Seld., 567, 589; *Savage* v. *Burnham*, 17 N. Y., 561, 567, 568; *Leggett* v. *Hunter*, 19 id., 445, 454; *White* v. *Howard*, 52 Barb., 294, 300, 316.) Suspense of the power of alienation is not essential to the validity of a trust to receive the rents and profits. (*Boynton*

*v. Hoyt*, 1 Den., 53; *Fellows* v. *Heermans*, 4 Lans., 230, 336, 337; *Lang* v. *Ropke*, 5 Sand., 369; *Kane* v. *Gott*, 24 Wend., 662; *Cruger* v. *Jones*, 18 Barb., 471; *Coster* v. *Lorillard*, 14 Wend., 303; Smith's Com., 821; 4 Kent's Com., 320, 321; *Doane* v. *Phillips*, 12 Pick., 223, 226; *McLean* v. *McDonald*, 2 Barb., 534; *Belmont* v. *O'Brien*, 12 N. Y., 394; *Marvin* v. *Smith*, 56 Barb., 600; 46 N.Y., 571, 576; *Fitzgerald* v. *Topping*, 48 id., 438; *Duvall* v. *Eng. E. L. Church*, 53 id., 500; id., 351; 43 id., 303; 32 id., 319; *Gallie* v. *Eagle*, 65 Barb., 583; *Leggett* v. *Perkins*, 2 N. Y., 307, 314; *Brown* v. *Brown*, 3 Keyes, 345.) The trust did not terminate with the death of Mr. Fellows, but the title of the lands unsold remained in plaintiff for the purposes of the trust. (Stat. of Powers, §§ 79, 105; 1 R. S., 735; *Jackson* v. *Edwards*, 22 Wend., 498, 508; *Tobias* v. *Ketchum*, 32 N. Y., 389; *Wright* v. *Delafield*, 23 Barb., 517; *Foster* v. *Coe*, 4 Lans., 56; *Kissam* v. *Dinkes*, 49 N. Y., 605; Hill on Trustees, 231, 347; *Merthwaite* v. *Jenkinson*, 2 B. & C., 357; 1 Jarm. Pow. Dev., 224, *n ;* *Wykham* v. *Wykham*, 18 Ves , 395, 413, 414; *Goodtitle* v. *Knott*, Coop., 43; *Hawker* v. *Hawker*, 3 B. & Ald., 537; *In re Savings Trust*, Law R., 1 Eq., 416; *Miller* v. *Miller*, 1 Eng. R., 672; L. R., Eq. Cas., 263; *Hawley* v. *James*, 5 Paige, 461.) A trust for the payment of debts is valid. (*Rogers* v. *Tully*, 20 Barb., 641; § 65 Stat. Uses and Trusts, subds. 1, 2; *Belmont* v. *O'Brien*, 12 N. Y., 404.)

*Geo. B. Bradley* for the respondents. The instrument of October 10, 1868, vested no title in plaintiff unless it created an express trust within 1 Revised Statutes, 728, section 55. (*N. Y. D. Dock Co.* v. *Stillman*, 30 N. Y., 194; *Downing* v. *Marshall*, 23 id., 379; *Yates* v. *Yates*, 9 Barb., 340, 341.) No such trust was created. (*Wright* v. *Delafield*, 23 Barb., 516; *Hotchkiss* v. *Etting*, 36 id., 44; *Downing* v. *Marshall*, 23 id., 379; *Sterricker* v. *Dickinson*, 9 id., 518; *De Peyster* v. *Clendenning*, 8 Paige, 304, 305; *Leggett* v. *Perkins*, 2 Comst., 306; *Boynton* v. *Hoyt*, 1 Den., 57, 58;

*Hawley* v. *James*, 16 Wend., 160 ; 5 Paige, 318; *Lang* v.
*Ropke*, 5 Sandf., 369 ; *Kane* v. *Gott*, 24 Wend., 662; *Arnold*
v. *Gilbert*, 5 Barb., 198 ; *Selden* v. *Vermilyea*, 1 id., 58 ; 1 R.
S., 730, §§ 65, 96, 734.)   Even if this instrument vested a
power in trust under the statute, it vested no title or right to
possession in plaintiff.   (1 R. S., 729, §§ 58, 59 ; *N. Y. Dry
Dock Co.* v. *Stillman*, 30 N. Y., 194 ; *Clarke* v. *Crege*, 47
Barb., 599.)   This deed was merely a power of attorney.   (1
R. S., 727, 728, §§ 47, 49 ; 1 Seld., 456–460 ; 23 N. Y., 379 ;
36 Barb., 38 ; 9 id., 516, 518; 5 Sandf., 374, 375 ; *McDonough*
v. *Loughlin*, 20 Barb., 238, 245 ; 1 R. S., 735, § 108 ; id.,
738, § 134.)   Whatever trusts and powers were created by
this deed terminated on the death of Mr. Fellows.   (1 R. S.,
730, § 67 ; *Sterricker* v. *Dickinson*, 9 Barb., 516, 520.)   The
instrument of October 15, 1868, was ineffectual for any pur-
pose, and void.   (*Fellows* v. *Heermans*, 13 Abb. [N. S.], 15 ;
1 R. S., 728, § 49 ; id., 723, § 13 ; 13 id., 725, § 35 ; *Rawson*
v. *Lampman*, 1 Seld., 456, 460 ; *Wright* v. *Miller*, 4 Barb.,
611, 614; 4 Seld., 22 ; *Helmer* v. *Shoemaker*, 22 Wend., 137 ;
*Sheridan* v. *House*, 4 Keyes, 587 ; *Hill* v. *Hill*, 4 Barb., 427 ;
*Tyson* v. *Blake*, 22 N. Y., 560 ; *Norris* v. *Beyea*, 3 Kern.,
273 ; *Freeborn* v. *Wagner*, 4 Keyes, 27 ; *In re Diez*, 50
N. Y., 88.)

ALLEN, J.   Whether, during the life of Joseph Fellows,
the original owner of the property in question, the plaintiff
was possessed of an estate in the property conveyed by the
deed of the 10th of October, 1868, entitling him to the pos-
session, or whether that instrument conferred upon him a
mere power in trust, is not material to be considered upon
this occasion.   If a trust was created by the instrument
referred to and the estate vested in the plaintiff as trustee, it
was a trust for leasing the lands and paying over the rents
to Fellows, the creator of the trust, during his life, and termi-
nated at his death, before the commencement of this action.

With the termination of the trust the estate of the trustee
ceased.   That the deed or instrument under which the plain-

tiff claims title is very inartificially drawn and ambiguous in its terms, leaving much to be spelled out as to the actual purpose of the transaction and the intent of the parties is very obvious. The instrument has been frequently before the courts for interpretation, and there has been a wide diversity of opinion as to its true interpretation and effect. Some judges have held that by it a valid trust was created for the leasing of lands during the life of Mr. Fellows. Others have held that a mere power in trust was created in the plaintiff for the purposes mentioned in the deed, while others have been of the opinion that the instrument was but a warrant of attorney from Fellows to the plaintiff, revocable at the pleasure of the former.

If it should be conceded, for all the purposes of this action, that the plaintiff became seized under the deed of an estate in the lands in trust for leasing with the power of sale, there would still be a grave question whether he could recover of the defendant in the action. During the life of Fellows, the original owner of the property and the author of the trust, he was the sole *cestui que trust* entitled to receive to his own use all receipts from sales; and those entitled under the deed, after his death, had and could claim no interest in that part of the trust property which during the life of Fellows should be converted into money. The plaintiff, if trustee, had no discretion as to the time of sale, but was bound to sell within a reasonable time, for the best price that could be obtained. He could not, to the prejudice of the *cestui que trust* for life, defer a sale with a view to a prospective rise in value, or to benefit those who should become entitled after the death of the life tenant. The direction of the deed is to sell the lands, " by retail, for the best price that can be got for the same; " that is, the best price that could then be had for the same. The deed looked to a conversion into money as soon as sales could be made and during the life of Fellows, so far as practicable. The author of the trust deemed himself entitled to and entirely competent to care for and dispose of the proceeds of the sales that should be

realized during his life; and the provision for those who should come after him was only in respect to the lands that should remain unsold and the fruits of sales not realized at the time of his death.

It was not intended, and a court of equity will not allow a trustee of such a trust or of any trust, by postponing or accelerating a sale, to affect the interests of successive *cestuis que trust*. By so doing a trustee could, by fraud or collusion, defeat the intention of the trust and deprive the rightful owner of his just rights. (*Hawkins* v. *Chappel*, 1 Atkyns, 621·; *Walker* v. *Shore*, 19 Ves., 387.) Fellows, the author of the trust, who was also the *cestui que trust* for life, entitled to have sales made when they could be made at the best price and within reasonable time, lived four and a-half years after the execution of the deed, and could, during that time, have compelled .an execution of the trust by a sale of the lands, or such of them as could be sold. Instead of resorting to a court of equity to put the trustee in motion, he made sale of the *locus in quo* to the defendant Robertson, and, so far as appears, for the best price to be obtained, and received the avails, to which he would have been entitled had the sale been made in form by the plaintiff and the money received by him. Had Fellows found a purchaser for a proper price, he could have compelled the plaintiff to sell and pay to him the proceeds. The same result has been accomplished, and Fellows has received that to which he was entitled; and the defendant Robertson is, in equity, entitled to hold the premises as against the plaintiff, who, at most, during the life of Fellows, was a trustee invested with power to sell for his benefit and pay the proceeds to him; so that an equitable defence to the action is made out.

It is true that the interest of Fellows in the property during his life, and the fact that he was entitled to and could have compelled a sale of the property and every part thereof for his benefit during his life if proper prices could have been obtained for the same, is not entirely consistent with the idea that there was a valid trust for a leasing of the premises

during his life.   Such a trust would seem to imply, if not inalienability of the lands held in trust, at least, that upon any sale or transfer of the property, the proceeds, or avails, should be held upon a like trust, and the income only paid to the life tenant.   This, however, we do not pass upon.

Were it necessary to decide the question, I should have great difficulty in finding an express trust declared for any of the purposes for which by law such trusts may be created. The only purpose recognized by the statute of uses and trusts, of which there is the least intimation in the instrument, has respect to the rents and profits of the lands and their receipt and application to the use of Mr. Fellows, the owner of the lands, during his life.   An express trust may be created for such purpose, but for no other purpose, included within the powers conferred upon the plaintiff.   (1 R. S., 728, § 55.)

The main purpose of the instrument was to relieve its author from the burthen of managing the portion of his estate embraced within its terms, and create an agency for that purpose, and it was during the life of Fellows, in substance and effect, but an agency for the sale of the real property mentioned and the collection of the debts owing to Fellows for lands then under contract of sale, and for the payment of all the avails and proceeds to Fellows, the owner, who never parted with his property in or his rights to the income of, or the avails of the sales of any part of the property.   The whole purpose of the instrument might have been accomplished during the life of Fellows, by a sale of the property and the payment of the proceeds to him.   In that event those coming after him would have taken no benefit under it.   The authority to covenant in respect to the title in behalf of Fellows and his heirs was a simple warrant of attorney for that purpose, and the power under it terminated with the life of Fellows ; so that it is difficult to assign a place to the instrument, either as a conveyance or a warrant of attorney, or as creating a power in trust.   The sale of the lands was the principal object of the transaction and of the agency, and for that purpose a trust could not be created.   How much or how

little of the property was productive or could be made productive by way of rent does not appear; probably but a small portion could be rented, and the renting of that was subsidiary and secondary to the main purpose of the deed. The authority to rent did not embrace all the lands mentioned, but only such as could be rented and occupied by a tenant, *i. e.*, such as in the usual course of things would be regarded as the proper subjects of a demise, and for such short terms as should not interfere with the more important purpose, the sale of the lands.

This power to lease and to collect and pay over the rents could be exercised under a naked power of attorney or a power in trust, and under the same authority by which the sales should be made. There was certainly no trust created in respect to lands which were not the proper subjects of renting, and so far as the estate and interest of the parties to the deed are concerned, the instrument cannot properly be held to have created an express and active trust, vesting the title and possession in the trustee of a portion of the premises, and to have simply conferred upon him either a naked power or a power in trust as to other lands, all included in the same general terms. This would be to establish a trust not as created in terms by the instrument, but by proof of extrinsic facts which would have authorized the creation of an express trust. But without definitely passing upon this question, which is not involved in this action, and upon the decision of which the rights of other parties not before the court may depend, we pass to the consideration of the question whether a trust was created to come into existence at the death of Fellows.

The deed or instrument, while it provided for the management of the estate by the plaintiff for the exclusive benefit of Fellows, the owner, during his life, sought to provide for the disposition and distribution of it after his death, which should take the place of, and serve as substitute for a testamentary disposition. It declares that after the decease of Fellows, and after the payment of all his just and legal debts

and the expenses of the trust, the residue should be distributed in the manner and to the persons especially mentioned. It is urged that by this clause an express trust was created and existed from the death of Mr. Fellows, to sell lands for the benefit of creditors, which is one of the purposes for which an express trust may be created. (1 R. S., 728, § 55.) The reason for retaining this trust among the few express trusts allowed by statute is obvious. The intention was to legalize a trust under an assignment for the benefit of creditors, which would in most cases be entirely defeated, if the title were to remain in the debtor; and there is an evident distinction between a trust to sell, created by deed and to be operative during the life of the grantor, and a similar trust created by devise or by deed to take effect at the death of the grantor. In the former case there is a necessity that the estate should pass, but in the latter no such necessity exists. By construing the trust as a power the interests of all are as effectually secured as if the legal estate passed to the trustees. On the death of the grantor or testator the power attaches immediately on the land, and nothing can be done to defeat its execution. The object of the revisors in the radical changes effected in the law of uses and trusts was to limit and restrict express trusts to cases in which it was necessary, for the protection of those interested, that the title or possession should vest in the trustees. Where no such necessity existed, the intent was that the trust should be executed as a power, and without vesting the legal title or possession in the trustees. (Revisers' Notes, 5 Stat. at Large, 322 *et seq.*)

There is no express trust created for the sale of lands for the payment of debts by the instrument under consideration. If one is established, it must be by interpretation of the doubtful phraseology of a crude and imperfect document, and without necessity for its existence, and when all could be accomplished under a power. The power to sell may exist with authority to pay debts from the avails, but if an express trust exists it is not the direct creature of the instrument itself, but it must be judicially established upon proof of the

existence of debts for the payment of which a trust might
have been created. Constructive and implied trusts are not
abolished. They may be implied or presumed from the sup-
posed intention of the parties and the nature of the transac-
tion, or they may be raised independently of any such inten-
tion, and forced on the conscience of a trustee when necessary
to prevent a fraud. But an intent to create an express trust
will not be presumed in the absence of an express declaration
to that effect when the whole purpose of the deed, without
peril to the rights of any person, can be accomplished under
a power conferred by the deed.

There is not even an express direction to the plaintiff to
pay the debts of Fellows, still less does he take title subject
to their payment; nor are they charged upon the property
which is the subject of the power delegated to the plaintiff.
The instrument does not profess to dispose of all the prop-
erty of Fellows, and does not put at the control of the plain-
tiff the large amounts received to his use and paid to him
during the five years of the continuance of the power before
his death.

The clause, "and after the payment of all my just and
legal debts," preceding the directions for distribution of the
residue of the property included within the power, comes far
short of making that property the primary fund for the pay-
ment of the debts, or directing their payment from it. It is
at the most but an intimation and direction that the disposi-
tion of his property then made shall not interfere with the
just claims of creditors, whether their debts were created
before or after the execution of the instrument. It did not
work any change in the order in which his property should
be appropriated to the payment of his debts as prescribed by
law. The personal representatives of Mr. Fellows will be
charged, and notwithstanding the execution of this instru-
ment are charged, with the payment of his debts from per-
sonal assets in their hands. Personal estate is to be first
exhausted in the discharge of debts, including at common
law the payment of debts with which the real estate is

charged by mortgage. By statute, in this State, heirs and devisees are required to satisfy mortgages upon property devised or descending to them. (1 R. S., 749, § 4.) The order of marshaling assets for the payment of debts is to apply, first, the general personal estate; second, estates specifically devised for the payment of debts; third, estates descended; fourth, estates devised, though generally charged with the payment of debts. (2 Williams on Ex., 1526, note 2; *Livingston* v. *Newkirk*, 3 J. C. R., 312; 4 Kent's Commentaries, 420.) In order to effect a change in the order there must be some absolute and positive direction, clearly indicating an intent to relieve the class of assets primarily liable, and to charge some other portion of the estate in exoneration of the funds and property primarily liable. A mere direction to an executor to sell real estate does not make the proceeds necessarily liable as personal assets; but they will be only applicable to the payment of debts when the assets personal in their character shall have been exhausted.

Heirs and devisees (and the donees under this power may be regarded as occupying the same position) can only be charged in respect to lands coming to them, or the lands themselves charged with the payment of debts, upon proof that there are no assets, personal or otherwise, applicable in the first instance to their payment. (2 R. S., 450 *et seq.;* *Schermerhorn* v. *Barhydt*, 9 Paige, 28.) A general direction in a will for the payment of the testator's just debts, is not the express direction which the statute requires to change the statutory order of marshaling the assets of a testator; and the construction and effect of such a direction must be the same whether found in a will, deed or other instrument. (*Rapalye* v. *Rapalye*, 27 Barb., 610; *Kinnier* v. *Rogers*, 42 N. Y., 531; *Skinner* v. *Quin*, 43 id., 99.) In the case last cited, R., by will, after the payment of all his lawful debts, gave to his executor all his estate, real and personal, upon certain trusts, with a devise over of all the rest and residue of his estate to his wife, with authority to his executor to sell and convey his real estate after the death of his

mother, and pay over the proceeds to his wife. This court held that the power to sell was valid as a power in trust and not as an express trust. *Galton* v. *Hancock* (2 Atk., 424, 430) was twice argued, and upon the second argument Lord HARDWICKE, after holding the case for twelve months under advisement, reversed the decision which he had first made. The question was whether the devisee of an estate incumbered by a mortgage was entitled to have the estate exonerated out of the real assets which descended upon the heirs, and upon the second argument it was held she was, notwithstanding the testator in his will set out with the desire that all his debts should be paid in the first place, and concluded with a general residuary devise to the defendant, who asserted the claim that the mortgage debt should be satisfied from the assets which went to the heir. It was claimed there, as here, that the introductory clause directing the payment of debts was sufficient to charge the incumbrance upon the estate devised, and that the devisee took it *cum onere*. But this claim was disallowed, and the rule established in equity for the marshaling of assets was applied.

The property itself, the subject of the power to the plaintiff, not being charged with the payment of the debts except as all the property of the deceased debtor is charged in its equitable order, and there being no conveyance of the property to the plaintiff, subject to the payment of the debts so as to charge him as a grantee *cum onere*, an intent to create a trust for the payment of the debts from this particular property cannot be implied. Had there been a trust created for the payment of debts the trust fund would by such act have been made the primary fund for that purpose, and to raise such a trust by implication or by judicial interpretations would be to change the order in the marshaling of assets, without and against the sanction of the party who alone can change the equitable rule on that subject, and transfer the charge from one class of property to another. This was not a grant of property to pay debts, but at most a grant of an estate which might, if there should be a deficiency of other

assets, be charged with their payment. Whether there was a valid power in trust created in the plaintiff by the instrument under consideration, it is not necessary to determine, for such a power would not give the plaintiff a title to or right of possession of the property, but the same would go to the heir or other party entitled, subject to this power. It is sufficient for all the purposes of this action that at the time of its commencement the plaintiff was not, as the trustee of an express trust, entitled to the possession of the premises.

The judgment should be affirmed.

EARL, J. (dissenting). In the view I take of this case, it will not be necessary to consider the force and effect or to determine the validity of the instrument executed by Fellows on the 15th day of October, 1868, and I will confine my attention to the prior instrument executed October tenth. I will first consider what Fellows intended by that instrument, and then whether that intention can have effect under our laws.

It was his evident intention to vest the title to all the property conveyed in the trustee. He had become old and infirm, and the management of his large estate, located in eight different States, had probably become irksome and harassing to him. He therefore says, that, on account of his infirmities and advanced age, he deems it expedient to convey all his property to his nephew, and he uses apt and proper terms to convey title. He acknowledges a consideration of one dollar, and uses the terms " have sold, and by these presents do grant, release and convey," terms appropriate and ample to convey the fee to real estate. The terms of the trust also show that the grantor must have understood that the title to the property was by the instrument vested in the trustee. It was provided that the trustee should sell the lands by retail for the best price that could be obtained, and convey the same in fee simple to purchasers, with covenants of warranty binding his heirs; that until the lands should

be sold he should rent such of them as could be rented for the best prices he could obtain; that he should collect all debts, execute deeds of all lands then under contract, and pay, distribute and dispose of the avails of the real and personal estate as follows: First, to defray the expenses of the trust; secondly, to pay over to Fellows during his life, or appropriate to his use under his direction, all the residue of moneys received; and, thirdly, after his decease to pay and distribute the residue as directed. It will thus be seen that the intention of Fellows to vest the title in the trustee, and not make him a mere attorney under a revocable power of attorney, is too clear for dispute.

This intent should have effect, unless some statute or rule of law stands in the way. It is the injunction of the statute that "in the construction of every instrument creating or conveying, or authorizing the creating or conveying of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law." (1 R. S., 748.) This statute rule requires not only that the language of an instrument unquestionably valid shall be so construed as to give effect to the intent of the parties, but that the construction shall be such as to uphold the instrument rather than to nullify it. (*Post* v. *Hover*, 33 N. Y., 593.)

At common law this instrument would have been valid and effectual to pass the title to the real estate. (4 Kent's Com., 320; *Leggett* v. *Perkins*, 2 Coms., 297; *Wright* v. *Miller*, 8 N. Y., 9.) But the claim is that it is inoperative to pass the title under our statutes, because no express trust is created under section 55 of article 2, title 2, chapter 1, part 2 of the Revised Statutes, and because section 88 provides that where an express trust shall be created for any purpose not enumerated, no estate shall vest in the trustees; but the trust, if directing or authorizing the performance of any act which may lawfully be performed under a power, shall be valid as a power in trust. It is conceded by the counsel for the trustee

that no estate vested unless a valid trust was created for some one or more of the purposes mentioned in section 55. He claims, however, that there was a valid trust under subdivision 3 of the section " to receive the rents and profits of lands and apply them to the use of any person during the life of such person or for any shorter term." Here were lands situated in eight different States. The trustee was directed to sell them at retail for the best price he could get. It would be impossible to sell them all at retail immediately, and the probabilities were that it would take years to do so. The grantor evidently supposed that they would not all be sold in his lifetime, as he made provision for distribution, after his death, to his heirs. Under such a power, while the trustee was bound to make the sale with reasonable dispatch, careful regard being had to the interests of the beneficiaries, he was not required to sell until he could find such purchasers as would purchase and pay for the property its fair value. The grantor, therefore, provided that until the lands should be sold, the trustee should rent them for the best price he could get, and that he should pay the avails, both the rents and proceeds of sales, as above specified.

I am of opinion that here was a trust to receive the rents and profits and apply them to the use of the grantor. It is no objection to the validity of the trust that the avails of the real estate were to be applied to the use of the grantor ( *Van Epps* v. *Van Epps*, 9 Paige, 237 ; *Matter of Livingston*, 34 N. Y., 555 ; *Rome Ex. Bank* v. *Eames*, 1 Keyes, 588) ; or, that the avails of the real and personal estate were to be mingled together and applied. ( *De Kay* v. *Irving*, 5 Denio, 646.) The direction to " pay over " is, substantially, a direction " to apply to the use." ( *Leggett* v. *Perkins*, 2 N. Y., 297 ; *Leggett* v. *Hunter*, 19 id., 445, 454.) It is true that nothing is said in the instrument about receiving the rents, but that is necessarily implied. The authority to rent carries with it an authority to receive the rents. It is not necessary that the purpose of the trust should be declared in the words of the statute ; it is sufficient that a purpose within the stat-

ute is clearly embraced within the language used. ( *Vernon* v. *Vernon,* 53 N. Y., 351, 359; *Tobias* v. *Ketchum,* 32 id., 319.)

It is claimed on behalf of defendants that the authority to rent is merely incidental to the absolute authority to sell, and that, therefore, there is no valid trust to receive rents and profits within the statute; and this view was sanctioned by the opinion of the learned judge who wrote the opinion of the General Term. Precisely what is meant by the word "incidental," in this connection, I do not understand. The authority to receive rents and profits was not conferred as incidental to the authority to sell, but was conferred in express language and by terms just as absolute as the power to sell. The authority to sell was, doubtless, the primary and most important authority, and when exercised would put an end to the authority to lease. But until the land should be sold, the power to lease was also important, and its exercise for the benefit of the beneficiaries under the instrument was just as essential, until the power to sell should be called into exercise, as the latter power. The leasing of the lands was one of the express purposes for which the conveyance was made, and hence it is in no sense merely incidental to any other purpose. In *Irving* v. *De Kay* (9 Paige, 521) the chancellor said: "If any of the purposes for which the trust was created are legal and valid, and would have authorized the creation of such an estate, the legal title vests in the trustees during the continuance of such valid objects of the trust."

It is further claimed by the learned counsel for defendants that a trust within the third subdivision of section 55 operates to suspend alienation, although the title be vested in the trustee, and that there can be no such trust where there is absolute and unqualified authority and discretion to sell, and it was mainly upon this ground that the case was decided against the plaintiff in the courts below. The claim, as I understand it, is, that where there is a trust, under section 55, to lease lands, the title must vest in the trustee for some term, and during such term must be inalienable under the

statute; that such a trust cannot coexist with an absolute power of sale which may be executed at once, and that the trustee having absolute power to sell cannot vest himself with title in trust by voluntarily creating a term by his action or omission to sell.

There is no statute providing that a trust to receive the rents and profits and apply them until the land shall be sold, may not coexist with an absolute power of sale, and there is nothing in the nature of the trust and the power which forbids their coexistence.

There is no statute which provides, that, in order to vest title to land in a trustee upon such a trust, the power of alienation must for some term be legally suspended, and there is no reason for such a suspense of alienation. Alienation may be practicably and necessarily suspended and yet not theoretically, in law, suspended; and during such suspense the title may vest for the purpose of such a trust.

The trustee does not confer title to the real estate upon himself by omitting to exercise the power of sale. He takes the title upon the lawful trust at the same time that he takes the power, and while he can put an end to the trust by exercising the power, until he does exercise it the title and trust remain. Suppose the grantor had conferred the title with the trust upon one person and made some other person the donee of the power, could it be doubted that the trust estate would vest at once and remain in the grantee until the power was exercised? There would have been no legal suspense of alienation, and yet no practical or legal inconsistency between the trust estate and the power of sale. The statute requires no particular length of time for the trust to continue. It may be for life or for any shorter term. The duration of the term may not be fixed and certain, and a term, the length of which is defined in the instrument, cannot differ in substance from one which the language of the instrument when applied to the circumstances of the case makes necessary. A trust which must exist for one day is just as valid as one which must exist for life.

This construction of the statute is in no way in contravention of its letter or spirit, and must certainly be found in its practical consequences most convenient and suitable. The position of this case would have been the same if the instrument had conferred a purely discretionary power instead of an absolute direction to sell. There would have been no legal suspense of the power of alienation in that case. It might be some years before the lands could all be sold, and unless in the mean time the trustee could lease and receive the rents and profits, the beneficial purposes of the grantor would be defeated; unless the trustee held the title and could thus control the possession, he could not execute the trust. A construction of the statute which leads to such consequences should not be tolerated unless some controling authority requires it. To maintain his construction defendants' counsel calls our attention to 1 Revised Statutes (730, § 65), and to the following authorities: *Boynton* v. *Hoyt* (1 Denio, 57); *Hawley* v. *James* (16 Wend., 160); *Lang* v. *Ropke* (5 Sandf. Sup. R., 369). Section 65 provides that when the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees in contravention of the trust shall be absolutely void. This section has reference to a sale not authorized by the instrument creating the trust. A sale thus authorized, which simply terminates the trust, cannot be said to be in contravention of it. In *Boynton* v. *Hoyt*, Judge BRONSON said a trust to receive the rents and profits and apply them under subdivision 3 of section 55, did suspend the power of alienation. That was said in a case where there was a term during which the rents and profits were to be received, and the question was whether the power of alienation was illegally suspended, and as the term was longer than authorized by statute, it was held to be illegal and void. In *Hawley* v. *James*, Judge BRONSON again used the same language in a case where he held the power of alienation was illegally suspended by a trust to continue longer than the statute allowed. In *Lang* v. *Ropke*, DUER, J., said: "It may be admitted that the necessary effect of the trust

which this will creates in relation to the rents and profits was to suspend, during its continuance, the absolute power of alienation, but as the trust was to last no longer than until the youngest child of the testator should attain the age of twenty-one years, the suspense which it involved was far within the limits which the statute allows." In those cases the question here involved was not under consideration. There the rents and profits were to be received for certain terms, and as there was no power to sell during the terms, there was a suspense of the power of alienation — in the two former cases for a period not authorized by law, and in the latter case for a period authorized. The question whether a power to sell could coexist with the trust was not involved in either case.

On the other hand, showing that this is a valid trust that can exist without a legal suspense of the power of alienation, and that it can coexist with an absolute power of sale, there are a number of authorities. In *McLean* v. *MacDonald* (2 Barb., 534), lands were devised to trustees upon trust, to receive the rents and profits thereof, and to sell the same and invest the proceeds on bond and mortgage, and to collect the income and profits and apply the same during two specified lives, to the use of certain persons named; and it was held that there was a valid trust, under section 55, and that the trustees were seized of such an estate in the lands as would entitle them to maintain ejectment. The case is imperfectly reported. But as I understand the facts, the trust and power of sale coexisted and there was no suspense of alienation, the trustees being empowered at any time to sell the real estate. The fact that they were to invest the proceeds and continue trustees of them as personal estate had nothing to do with the validity of the trust as to the real estate. That terminated when the sale was made. In *Belmont* v. *O'Brien* (12 N. Y., 394), lands were conveyed to trustees upon trust to receive the rents and profits, and they were empowered at any time to sell the lands and to invest the proceeds in other lands or personal securities. It was

held that the trust to receive the rents and profits was a valid one; that the title vested in the trustees and that the power of sale could coexist with the trust, and that a sale of the lands was not in contravention of the trust within section 65 of the statute. There was no suspense of alienation. Judge HAND said: "The same person may hold the estate in trust for one purpose, and at the same time be a grantee of a power in trust to be executed or take effect at some future day for another. Here the owner in fee gave the power by the same instrument that conveyed the estate; and suppose it had been an absolute power to sell and terminate the present use and appoint the money, it could never have been the intention of the legislature, not only to frustrate the intention of the grantor, but to make an entirely different conveyance. * * * Where a sale is directed in the instrument creating the trust, such sale is not "in contravention of the trust," nor is it repugnant to the grant or devise, for that provides the defeasance, new use, executory limitation, or whatever it may be." In *Fitzgerald* v. *Topping* (48 N. Y., 438) lands were conveyed to a trustee upon trust to receive the rents and profits, and to sell under the control and direction of the court. There was no suspense of the power of alienation, as the lands could at any time be sold with the consent of the court; and it was held that the title vested in the trustee, and that he could recover the lands in an action of ejectment. In *Vernon* v. *Vernon* (53 N. Y., 351) executors were empowered to receive rents of certain stores and pay them over to the testator's wife during her life, and they were also empowered to sell the stores at a minimum price. There was no legal suspense of alienation, and yet it was held that the trust was valid, and that the executors took the legal title. In *Marvin* v. *Smith* (56 Barb., 600), Smith being seized of certain lands, conveyed the same by deed to Bennett forever, in trust, to receive the rents and profits and appropriate the same for the sole use and benefit of Smith's wife, according to her directions, and after her death, in case the grantor should survive her, to convey the

lands to her children ; but in case no children or descendants should survive her, that then the remainder of the estate granted should, after her death, be conveyed to the grantor, if living; and, in further trust, that whenever the wife should desire a sale or mortgage of the premises, or any part thereof, the grantee should sell or mortgage such part or portion and pay over the proceeds to the wife, or reinvest the same according to her directions. There was no suspense of the power of alienation. The trustee could sell, with the consent of the wife, at any time, and yet it was held that the trust was valid, and that the title vested in the trustee. Judge TALCOTT speaking of *Belmont* v. *O'Brien* (*supra*) says : "Although the power in that case was to sell and reinvest upon the same trusts, and in this case, there is no specific direction to apply the proceeds of the sale or mortgage to the same trusts, yet the argument of the opinion in that case, I think, satisfactorily shows, if argument were needed, that a trust and a power to terminate it, contingent or otherwise, may exist together when they are not inconsistent." That case was affirmed in the Court of Appeals (46 N. Y., 571), and the opinion of Judge TALCOTT expressly indorsed. In *Gallie* v. *Eagle* (65 Barb., 583) there was a trust in land to receive the rents and profits and apply the same to the support of a minor until he should attain the age of twenty-one years; and the trustee was authorized, in his discretion, to sell and grant the land and invest and hold the proceeds on the same trust. There was the same objection to this trust which has been made here, and it was held that it was valid, and that the trustee had the title and could maintain an action for the partition of the land. In *Fellows* v. *Heermans* (4 Lans., 230) an action by the grantor against the grantee, the plaintiff in this action, to set aside the instrument now under consideration, Judge HOGEBOOM, with whom Judge PARKER concurred, held that this was a valid trust under section 55. I therefore hold, both upon principle and authority, that there was a valid express trust created by this instrument to receive and apply the rents and profits of the lands to the

use of the grantor during his life, and that the title vested in the grantee, the plaintiff.

It is claimed by the plaintiff that this trust survived the grantor, and that it must continue until the land shall all be sold under the power conferred upon the trustees. The trust is authorized " to receive the rents and profits of lands and apply them to the use of any person during the *life* of *such* person, or for a *stated* term," subject to the rules prescribed in the first article of the same title. The trust need not be for the benefit of one person only, but may be for the benefit of more than one, provided the conveyance creating the trust does not suspend the power of alienation of the land, or authorize a suspense of alienation for a period longer than that allowed by article 1, referred to. I am inclined to think that this trust cannot be upheld for a longer period than the life of the grantor, and that it, therefore, terminated at his death, and that the legal title to the land, subject to the execution of any valid power contained in the instrument, then vested in the heirs of the grantor, unless there is some other valid trust which continued the legal title in the trustees.

Section 55, subdivision 1, authorizes an express trust " to sell lands for the benefit of creditors," and a deed conveying lands upon such a trust vests the legal title in the trustee. (§ 60; *Duvall* v. *English Ev. L. Church of St. James*, 53 N. Y., 500.) This deed, after providing for the expenses of the trust and the payment of the avails of the property, during the life of the grantor, to him, provides as follows: " After my decease and after the payment of all my just and legal debts and the expenses of the trust aforesaid, the residue shall be distributed," etc. Here is a power to sell and pay the avails to the grantor during his life, and after his death, a power to sell, and *after* the payment of debts, to distribute the balance as directed. This is the same as if he had provided that the trustee should sell and use the proceeds first to pay his debts and then to distribute the balance to his appointees or heirs. If it had been in that form no one would dispute that, within the statute, it was a power to sell for the benefit of creditors.

The language used has the same effect. The lands must be sold, and the debts, which at the creation of the trust amounted to nearly $250,000, must be first paid. It is not necessary that a trust should be expressed in the language of the statute. It is one of the fixed rules of equitable construction that there is no magic in particular words, and any expression that shows unequivocally the intention of the parties to create a particular trust will have effect. Language will be liberally construed to give effect to the intention of the parties and to uphold the trust deed. (Hill on Trustees [2d Amer. ed.], 82, and cases cited.)

Here, then, the plaintiff held the legal title to the real estate upon a valid trust, during the life of the grantor. At his death the trust to sell, for the benefit of creditors, came into activity, and the plaintiff took the legal title for the purposes of that trust. Such legal title will continue in him until that trust is fully discharged. As debts remained unpaid at the time of the trial, and there was no proof that there was one dollar of personal property to pay them, he then had the legal title and was entitled to recover by virtue thereof.

In the examination of this case I have not deemed it important to consider the force and effect of the instrument executed October fifteenth. If valid that instrument, certainly, did not weaken plaintiff's title; if invalid, the original instrument was not affected by it.

But there was another defence relied upon at the trial which must be briefly considered. The defendants proved that on the 16th day of December, 1870, a contract was made between Joseph Fellows and defendant Robertson, for the sale of the land in question by Fellows to Robertson, for the sum of $800, and that defendants went into possession under that contract. The terms of that contract are not set out in the case, and it does not appear that any portion of the $800 was paid or tendered by the defendants to any one. The defendants did not claim, either in their answer or upon the trial, to have the contract specifically performed, and there was no proof showing that they were entitled to have it thus

performed.  I am unable to perceive how this contract and the circumstances connected with it furnish any defence to this action.  Fellows had divested himself of the title to the land by the deed of trust, and thereafter had no right to interfere with the land.  He could compel an execution of the trust by the trustee, and if he unreasonably delayed sales of the land could, undoubtedly, as one of the beneficiaries of the trust, hasten the sales.  But he could not, himself, sell or contract to sell any of the lands.  It matters not that he was to receive the entire avails of all sales made in his lifetime.  The trustee was not absolutely required to sell all the lands in his lifetime; it may not have been practicable to do so.  There were, therefore, other beneficiaries interested, and they were entitled to have the judgment of the trustee in making the sales.  Fellows had no more right to sell the lands, or make contracts of sale, than any stranger.

I am, therefore, of opinion that upon the facts appearing upon the trial, the plaintiff was entitled to recover, and the judgment of the General Term should be reversed, and new trial granted, costs to abide event.

ANDREWS and MILLER, JJ., concur with ALLEN, J. ; CHURCH, Ch. J., and FOLGER and RAPALLO, JJ., concur in result, on the ground that under the contract with Fellows, the defendant, not being in default, established an equitable defence to the action.  EARL, J., dissenting.

Judgment affirmed.