JAMES MATTESON AND OTHERS, APPELLANTS, v. WHEELER ARMSTRONG AND OTHERS, RESPONDENTS.

*Will — construction of — suspension of power of alienation.*

A testator by his will directed that his executors should receive and collect the rents, issues and profits of his estate, and, after paying therefrom certain legacies and annuities, pay over the remainder to his widow for and during her natural life. Upon her death the executor was directed to pay out of the rents, etc., of the real estate, and out of the personal estate and the proceeds of the sale of real estate to a son and daughter of the testator $1,000 to each, in two annual payments; the first to be made at the expiration of one year from the death of the wife, and the same sum to a grandchild if he should arrive at lawful age (though it was not in any event to be paid over to him until one year after the wife's death), and an annuity was given to said grandchild during his minority.

That "after the payment and discharge" of these legacies, the real and personal estate, "as speedily as the same can be converted or divided," should be divided between the son, daughter, and grandchild. *Held*, that the trust estate terminated upon the death of the wife, at which time the legacies to the children and grandchild vested in them, and from and after that time they were entitled to the possession and enjoyment, as tenants in common. of the undivided property, subject to the power of conversion, division and sale, and that there was, therefore, no unlawful suspension of the power of alienation.

APPEAL from a judgment entered on a nonsuit ordered at the Oneida Circuit.

The action is ejectment. The plaintiffs assert title as the heirs at law of Simon Matteson, deceased. The defendants claim under a grant executed by the surviving executor of the last will of said deceased, insisting that said executor had power under the will to convey. The plaintiffs contend that the alleged power is void, and that the premises descended to them.

*C. D. Adams*, for the appellants.

*H. A. Foster*, for the respondents.

SMITH, J.:

By the thirteenth clause of his will, the testator expressly gave a power of sale to his surviving executor. The clause is in these words: "I do further empower and authorize my executor surviv-

ing my wife, if it shall become necessary after her decease, and shall be deemed by him advisable, to sell, convey and execute sufficient deeds of conveyance of the whole, or any part or parts of my real estate, provided the same is done to carry into effect the spirit and intention of this my said will."

The appellants' counsel contend that the scheme of the will was to suspend the power of alienation of the real estate for the term of at least two years after the death of the widow; and, as the power of sale was subservient to, and in aid of, such scheme, it was void, the suspension being illegal, and, consequently, the grantee of the executor took no title. The provisions of the will which are supposed by the counsel for the appellant to create an illegal suspension are, in substance, these: By the fifth clause, the executors (the testator's wife and George H. Lynch) were directed to receive and collect the rents, issues and profits of the estate during the lifetime of the wife, and out of the same, and until the payment of the legacies provided for in the eighth clause, they were to pay an annuity of $200 to the testator's son, James, and one of $100 to his daughter, Polly Ann Fuller. By the same clause, the surviving executor was authorized and directed, after the death of the wife, to receive and collect the rents, etc, and dispose of the same as provided in subsequent parts of the will.

The sixth clause gave to the widow, during life, the residue of the rents, etc., of the real estate remaining after the payment of debts, and of the annuities provided for, and of interest on incumbrances, taxes, insurance and repairs, and of the legacies payable during her lifetime. By the eighth clause, the testator directed that the executor surviving his wife should, out of the rents, etc., of the real estate, and out of the personal estate, and out of the. proceeds of the sale of real estate, if necessary, pay to the testator's said son and daughter $1,000 each, in two annual payments; the first to be made at the expiration of one year from the decease of his wife, without interest. The ninth clause gave to the testator's greatgrandchild, Alfred Wilson, $1,000, if he shall arrive at lawful age, payable out of the same funds mentioned in the eighth clause, but in no event payable within one year from the death of the testator's wife, or before the payment of the said legacies to his children. Finally, it was provided by the tenth clause, that " after the pay-

ment and discharge of the legacies provided for in the eighth and ninth clauses, and after providing for the annuity charged in the fourth clause — to wit, an annuity of $300 to the said Alfred Wilson, during his minority, for his education — if not terminated, the real and personal estate, "as speedily as the same can be converted or divided," shall be divided into four equal parts and disposed of as follows : two parts to be held by the surviving executors in trust, the income to be paid quarterly to the testator's son, and on his death said parts to be divided among his heirs ; one of said parts to be given to the testator's said daughter, and the other to his grandchild, Edward Matteson.

A question arises upon these provisions, whether the executors took an estate in trust or a mere power. In either case the power of alienation was suspended during the lifetime of the widow, inasmuch as the rents and profits were to be received by the executors and applied by them to the use of certain beneficiaries until her death ; but there was no suspension after her death unless the executors took an estate in the land, and unless the provisions postponing the time of payment of legacies to one and two years after the death of the widow, had the effect to tie up the estate in the hands of the executors during that period.

There are, certainly, no express words in the will, either devising the real estate to the executors, or creating a trust. In the case of *Tucker* v. *Tucker* (1 Seld., 408) it was held by the Court of Appeals that a trust will not be implied if all the duties enjoined upon the executors by the will, in regard to the lands, can be discharged under a power ; especially, when by construing the will to give the executor an estate the devise will be void, on account of its suspending for too long a period the power of alienation. In that case, a testator, after charging upon eight houses and lots an annuity to his widow of $1,500 during her life or widowhood, devised four of the houses and lots to four grandchildren for life, with remainders over in fee, and the other four to four children in fee, but directed that neither of the houses and lots should pass to the possession or use of the devisees until the expiration of one year after the death or marriage of his widow ; and in the meantime authorized his executors to rent the houses, collect the rents, make repairs, pay taxes, effect insurance, and to divide the surplus income among the four

children. It was held that the executors took a mere power, and not a trust term, in the houses and lots. Even a general devise to executors in trust vests no estate in them, except for such of the declared purposes as require that the title be vested in them. This rule was laid down and applied in the case of *Manice* v. *Manice* (43 N. Y., 303). There, a testator devised and bequeathed all his residuary real and personal estate to his executors in trust, to receive the income and to apply it according to the directions of the will, during the life of the testator's widow; upon her death to sell certain lots, and cause the residue of the estate to be appraised by three appraisers, one of whom should be chosen by the surrogate of the city of New York, to divide the whole into twelve equal parts; to convey three of them to the testator's son W., in fee, or in case of his death to his then living lawful issue; to convey three other parts to the testator's son E., in fee, and in case of his death prior to the time of such distribution, to his then living lawful issue; to hold and retain as trustees under said will two of said parts in trust, to invest, lease, etc., and receive the income, and apply it to the use of his daughter M., during her life, with remainders over after her death. And like trusts as to two others of said shares each for the benefit of his two daughters C. and F., respectively. It was held by the Court of Appeals that the estate of the trustees under the general residuary devise would terminate upon the death of the widow; that the trust to sell vested no estate in the trustees; that the trusts to appraise, divide and convey were unauthorized as trusts, but could be executed as powers; that upon the death of the widow the devises to the sons and trustees for the daughters respectively would immediately take effect in actual enjoyment; and that the trusts to sell, appraise and divide did not suspend the power of alienation, but that from the time of the death of the widow, and pending the division, the sons, and the trustees for the daughters, would be entitled to the possession and enjoyment, as tenants in common, of the undivided property, subject to the power of sale and division.

In the recent case of *Heermans* v. *Robertson and others* (64 N. Y., 332, 343) the rule is reiterated by the Court of Appeals that an intent to create an express trust will not be presumed in the absence of an express declaration to that effect, where the whole purpose of

the deed, without peril to the rights of any person, can be accomplished under a power conferred by the deed.

I have referred to these cases thus fully, because, although they are not in all respects analogous to the case in hand, the rule of construction declared and illustrated by them is applicable to, and, in my judgment, decisive of the present case.

It may be assumed for the present purpose that the executors took an estate in fee during the lifetime of the widow. While she lived they were to receive the rents and profits, and apply them to the use of certain beneficiaries, the widow included. But that trust terminated upon her death, and the gifts to the testator's daughters and grandchild, and the trust for his son, in the tenth clause, immediately took effect, and the donees were entitled to the possession and enjoyment, as tenants in common, of the undivided property subject to the power of conversion, division and sale, as was held in the case of Manice. From and after the death of the widow, the rents and profits of the lands were no longer to be collected and applied to the use of any beneficiary from time to time, but such rents as should accrue before the conversion or division were to be received by the surviving executor, and, with the personal property and the avails of a sale of real estate, were to constitute a fund for the payment of specific legacies, including the annuity to Alfred Wilson.

But it might happen that no rents and profits would come to the hands of the surviving executor after the death of the widow, for which the time of the payment of the legacies was postponed. The time of their vesting was not postponed, but they vested immediately on her death. Nor was there any postponement of the time when the lands should be sold or converted and the division be made. The surviving executor had a discretion in that respect. He had power to sell immediately after the death of the widow, or he could take time if he thought best; but his duty to sell or convert the realty was imperative, and if he had refused, the beneficiaries could have come into equity and compelled him to perform the duty in a reasonable time. The trust clause had not the effect to postpone the time for converting and disposing of the property till after the payment and discharge of the legacies, etc. The words " after the payment, etc., of the legacies, etc.," relate to the *quantum*

of the estate to be divided; that is to say, the direction is, whatever shall remain after paying the legacies, etc., shall be divided, etc. In short, the surviving executor had the power, the instant the widow died, to sell and convert the entire estate, and at once set apart enough to provide for the legacies and annuity, and divide the remainder into shares, as directed by the tenth clause, without any delay whatever.

If these views are correct, it follows that there was no illegal suspension of the power of alienation, and that the executor had power to make the grant under which the defendants claim title.

The judgment should be affirmed.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment affirmed.